ABRAM SPEER, respondent,

*v.*

ERIE RAILROAD COMPANY, appellant.

[Argued November 28th, 1906. Decided March 4th, 1907.]

In a conveyance of land to a railroad company, the grantee agreed to make and maintain the necessary fences on both sides of the tract conveyed, and to provide the grantor with a suitable and convenient road crossing. At the time of the conveyance the land was farmland, and the road crossing connected the portions of the farm severed by the railroad. Fences were built with sliding bars at the road crossing, and both parties acquiesced in this arrangement for many years.—*Held*, that the crossing was a farm crossing only.

On appeal from a decree advised by Vice-Chancellor Stevens, whose opinion is reported in *70 N. J. Eq. (4 Robb.) 318.*

*Mr. Halsey M. Barrett,* for the respondent.

*Mr. Cortlandt Parker* and *Mr. Richard Wayne Parker,* for the appellant.

The opinion of the court was delivered by

SWAYZE, J.

In accordance with the decree made pursuant to the opinion of this court in *68 N. J. Eq. (2 Robb.) 615,* the complainant has elected to submit the question of damages to the court of chan-

cery, and the case has been heard in that aspect. The vice-chancellor found that the complainant had sustained damage by reason of the destruction of his crossing to the amount of $3,000. The defendant complains of the amount of this award. The correctness of the vice-chancellor's judgment depends upon the character of the crossing to which the complainant was entitled. The vice-chancellor held that if it had been a mere farm or agricultural crossing $500 would be adequate compensation for its destruction; that it was, however, a crossing which the complainant would have the right to use to connect two public streets which he might dedicate, one on either side of the railroad, thus affording access from the present public highway to the complainant's land, which might thus be developed for villa sites. The vice-chancellor recognized the difficulty in this method of development which was presented by the decision of this court in *Marino* v. *Central Railroad Co., 69 N. J. Law (40 Vr.) 628*. In his view it was practicable for the complainant to escape the effect of that decision by giving to each purchaser of a lot a right of way along the whole course of the roads to be opened, or by dividing the land, over which the roads might be laid out on either side of the railway, into as many undivided shares as there were lots, and granting one of these shares with each lot, so that the grantee would own in fee-simple on both sides of the railway. The legality of such a method of development depends upon the extent of the complainant's right of crossing. This right was reserved in a grant by the complainant's ancestor at a time when the land was used only for farming purposes. The terms in which the right was reserved in the deed are as follows:

"The party of the second part [the railroad company] doth, for itself and its successors, agree to make and maintain the necessary fences on both sides of said tract of land, which shall be built before the work of grading on said tract is commenced, and shall provide the party of the first part with a suitable and convenient road crossing across the track of said railway where the party of the first part may direct."

In accordance with this reservation the railroad company built the fences and put sliding bars at the point where there had

been an old wagon road, a crossing was constructed which seems to have been not more than twelve feet in width, and this was treated by the complainant and his predecessor in title as a compliance with the terms of the deed up to the time of the destruction of the crossing by the enforced elevation of the company's tracks.

It was well said by Sir George Jessel, in *Cannon* v. *Villars, L. R. 8 Ch. Div. 415; 47 L. J. Ch. 597* (at *p. 599*) : "As I understand it, the grant of a right of way, *per se,* and nothing else, may be a right of footway, or it may be a general right of way—that is, a right of way not only for people on foot, but for people on horseback, or people in carts, carriages and other vehicles. Which it is, is a question of construction of the grant, and that construction will, of course, depend on the circumstances surrounding the execution of the instrument so to say. Now, one of those circumstances, and a very material circumstance, is the nature of the *locus in quo* over which the right of way is granted." Other cases are cited in *Jones Easem.* §§ *385, 389,* and the principle has been recognized by this court in *Cooper* v. *Louanstein, 37 N. J. Eq. (10 Stew.) 284* (at *p. 301*). We held, when the case was here before, that the crossing involved was a mere wagonway connecting portions of the complainant's land. It was not then necessary to decide as to the extent to which this wagonway might be used. Upon a consideration of that question, we think the facts of the case show that it was intended to reserve nothing more than a farm crossing as the vice-chancellor originally held, in *64 N. J. Eq. (19 Dick.) 601* (at *p. 602*). The use of the land at that time was for pasture, and there seems to have been no present likelihood of a development for villa sites, nor was there any such development for thirty years thereafter. Neither terminus of the crossing was in a public street. The width was but twelve feet—the width of a mere lane—not suggesting at all a street for public travel. The deed required the company to maintain fences, undoubtedly to prevent the landowner's cattle from straying upon the railroad tracks. To make this purpose effective, and to make the fences of any value to either party, it was necessary that they should be continuous, and this continuity was secured by providing

sliding bars. As late as 1900 the complainant regarded the land as pasture land, and desired the railroad company to repair the fence, as he wanted to turn his cattle into pasture, adding "as it is now it is not safe."

We do not think it necessary to decide the question suggested by the vice-chancellor as to the right of a landowner to maintain gates which obstruct a private way. That broad question is not now before us. The obstruction by bars was acquiesced in for years and was necessary to make effective the performance of the covenant to fence. The provision to this effect in the deed seems to have been originally intended for the benefit of the landowner. With changing circumstances it may have come to be more for the benefit of the railroad company. However that may be, the very fact that the parties agreed upon such an obstruction seems to us conclusive proof that they did not intend that this crossing should form a part of a public street, or rather a connecting link between two public streets. To use it in such a way would in effect enable the complainant to dedicate for a public street land of the railroad company over which he had a mere wagonway connecting two portions of his farm. We think, therefore, that if the complainant attempted to convey undivided rights in public streets opened by him on either side of the railroad, for the purpose of giving his grantees an undivided right in land on either side so that they might have access across the railroad by means of this wagonway, he would be evading the spirit of the grant made by his predecessor in title, and increasing materially the burden upon the railroad company. Such an evasion of the true intent of the deed would not be permissible.

The case differs from the English cases cited by the vice-chancellor—*Newcomen* v. *Coulson, L. R. 5 Ch. Div. 133, 138; United Land Co.* v. *Great Eastern Railroad Co., L. R. 10 Ch. App. 586; 44 L. J. Ch. 685.* In the former case the right of way began at a common highway, and there was a provision that in case the allottees should "street" out the way, the same should remain eleven yards wide. These facts make a very different case from the present, where each terminus of the way was in a

field, and the way itself was but twelve feet wide, enclosed by fences.

In *United Land Co.* v. *Great Eastern Railway Co., supra,* Lord-Justice James, in the court of appeal, relied upon a special clause in the railway company's act, that the land should not be taken without the consent of the commissioners of the woods and forests, and that the railroad company should make and maintain such accommodation and communication as the commissioners should require. He said very properly that it was impossible to say that that clause in the act was restricted to such communication as were necessary to the then present state of the land. In the present case the agreement in the deed and the conduct of the parties was such as to negative any anticipated use of the crossing for a public way.

· We think therefore that the vice-chancellor awarded damages upon an erroneous principle, and the decree must be reversed. It is difficult to determine exactly what compensation should be awarded for the destruction of this crossing considered as a farm crossing only. The witnesses vary considerably in their estimate. The vice-chancellor had the advantage of seeing them, and we think his estimate of $500 for the destruction of the crossing, viewed as a farm crossing, is a proper award.

The decree should be reversed and the record remitted to the court of chancery in order that a decree may be entered for the sum of $500.

*For affirmance*—HENDRICKSON, REED, TRENCHARD, BOGERT, VREDENBURGH, GRAY—6.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, GARRETSON, SWAYZE, VROOM, GREEN, DILL—7.