## VANDALIA RAILROAD COMPANY *v.* FURNAS.

[No. 22,054. Filed October 16, 1914.]

1. EASEMENTS.—*Ways of Necessity.—Creation.—Presumptions.*— Where a grantor conveys a portion of his land in such form as to deprive himself of access to the land retained by him, unless he crosses the land conveyed, he has a way of necessity over the portion conveyed, which is founded on the legal presumption, which prevails over the ordinary covenants of a warranty deed, that there was an understanding to that effect. p. 310.

2. EASEMENTS.—*Easements Running With Lands.—Private Railroad Crossings.*—Under the act of 1885 (Acts 1885 p. 148), providing that owners of tracts of land separated by a railroad right of way may construct and maintain wagon and driveways over and across such right of way, and §5444 Burns 1914, Acts 1899 p. 485, which amended the act of 1885 by granting the right to construct such crossings to owners whose lands were cut off from a public highway by any such railroad right of way, the right to construct and maintain such crossings is an easement running with the lands, which, however, will be terminated by conveyances severing the ownership in such way as to render the right to such crossings no longer necessary. pp. 310, 311.

3. EASEMENTS.—*Destruction.—Evidence.*—Where a right of way was granted to a railroad company upon the sole consideration of the benefits that would accrue to the grantor, and the company for many years maintained a crossing for his benefit, his subsequent conveyance of the same right of way to the railroad company's successor for an expressed consideration of $27.50 can not be construed as showing an intention that the crossing should be destroyed. p. 311.

From Boone Circuit Court; *Willett H. Parr,* Judge.

Condemnation proceedings by the Vandalia Railroad Company against Ella K. Furnas. From a judgment awarding damages, the company appeals. *Reversed.*

*Samuel O. Pickens* and *Owen Pickens,* for appellant.
*W. S. Doan* and *J. C. Mathews,* for appellee.

ERWIN, J.—This is an appeal from a judgment for damages, in a proceeding to condemn, for additional right of way, lands needed by appellant for reduction of its grade of the main track. The land sought to be condemned is 67 feet wide and 2,067 feet in length off the southeast side of a tract of land containing 66 acres belonging to appellee; the southeast boundary of said tract being the northwest boundary of appellant's right of way, and on which the main track has been located and operated for more than forty years.

The facts established in the case are, in substance as follows: The railroad was originally the Indianapolis and Vincennes Railroad. At the time of its construction in 1866-1867 the 66 acres of land now owned by appellee was a part of a farm owned and occupied by her father, Noah Kellum. On June 26, 1866, Kellum executed to the Indianapolis and Vincennes Railroad Company, a release of the right of way for the road through his farm, and the road was constructed on this right of way, thus separating the 66 acres from the rest of the land owned by Kellum.

The instrument of release contained no express provisions for a right of way over or across the railroad from one part of the farm to the other, except this provision, "provided said railroad company make provision for a stock passage under said road and the right to cut and remove for my use such trees as may be standing near and liable to fall upon the track, said company to allow me to join my fences on each side of said land, under the direction of the engineer, so as not to obstruct the use of the tracks, to pits in said railroad

tracks to be put in by said company at their own expense, provided I give them notice that I require the same before the ties are laid; said company also to give myself and heirs the exclusive use of any of the lands hereby released, not needed for the use of the road for the time being after the same shall be constructed, so as in no wise to obstruct the road.'' But a private crossing was afterwards constructed and maintained during the lifetime of said Kellum, and until about the time of the commencement of this condemnation proceeding, to wit, August 9, 1910. No passage for stock under said road was ever constructed. On August 19, 1890, Noah Kellum being still the owner of said farm, by warranty deed, conveyed to the Indianapolis and Vincennes Railroad Company, its successors and assigns, this same right of way 66 feet in width, 33 feet on each side of the center line of the main track on which the railroad was then located, together with all legal and equitable rights, claims and demands therein and thereto, which deed was duly recorded within the proper time. After Noah Kellum's death his land was divided among his heirs, appellee acquiring title to the 66-acre tract on April 24, 1906, by a deed from her coheirs; the southeast boundary being described in the deed as the north line of the right of way of the Indianapolis and Vincennes Railroad.

Subsequently an interurban electric railroad was constructed and has been ever since in operation on the southeast side of appellant's railroad and adjacent to its right of way, and interurban cars stop for passengers opposite said crossing. The reduction of grade and construction of the track on the strip of land acquired by this proceeding, have destroyed the old crossing and the privilege of ingress to and egress from the remainder of the 66-acre tract to the opposite side of the railroad and to said interurban track.

At the close of the evidence appellant requested certain instructions, No. 5 of which was refused, and in its stead

the court gave of its own motion certain instructions among which was instruction No. 12. Instruction No. 5 requested by appellant is as follows. ''Evidence has been given that in the construction of the plaintiff's railroad on the sixty-seven (67) foot strip of land condemned, a cut of varying depth had been made and is being made on a strip of land for the laying of railroad track. It is admitted by the defendant that all of said sixty-six (66) acre tract of land lies on the northwest side of the right of way of said railroad. If you find from the preponderance of the evidence that the defendant Ella K. Furnas owned no land on the other side of said railroad right of way opposite said sixty-six (66) acre tract of land, and that there was no public highway on the opposite side of said railroad right of way, which highway was separated from said sixty-six acre tract of land by said railroad right of way, then you will not allow her any damages on account of said cut interfering with, or depriving her of access from the remainder of said sixty-six (66) acre tract of land to the opposite side of said railroad.'' Instruction No. 12 given by the court is as follows: ''If you find that the Vandalia Railroad Company, or its predecessors, during the lifetime of Noah Kellum, appropriated a right of way for railroad purposes across the lands of said Noah Kellum, and that the said Noah Kellum at the time of such appropriation owned land on both sides of said railroad right of way, including the land on the north side thereof now owned by his daughter, Ella K. Furnas, and that said railroad company or its predecessors, during the lifetime of said Kellum constructed a crossing across said railroad, connecting said Kellum's land on opposite sides thereof, for the use of said Kellum and his said land, then the right to the use of said crossing passed to the grantees, heirs and successors of said Kellum, and said railroad company would have no right to remove said crossing unless it became necessary for the improvement of

said railroad, and if it did remove the same, another crossing should be supplied to take its place, or just compensation made for the removal and destruction of such crossing.''

The only assignment of error is, that the court erred in overruling the motion for a new trial. The grounds for a new trial therein assigned are the alleged errors of the court in refusing instruction No. 5 tendered by appellant, and the giving of instruction No. 12.

Appellant contends that when Noah Kellum in 1890 conveyed by warranty deed the strip of land through his farm for a right of way for appellant's railroad, without
1. any reservations therein, or provision for a crossing, that he and his heirs are estopped from demanding that a crossing be maintained from one portion of the land to the other. This contention can not prevail. It is settled law that if one conveys a part of his land in such form as to deprive himself of access to the remainder, unless he goes across the land sold, he has a way of necessity over the portion conveyed. This is because the law presumes an understanding of the parties that the one selling a portion of his land shall have a legal right of access over the part sold to the remainder if he cannot reach it in any other way. This presumption prevails over the ordinary covenants of a warranty deed. *Ritchey* v. *Welsh* (1898), 149 Ind. 214, 219, 48 N. E. 1031, and cases cited; *New York, etc., R. Co.* v. *Railroad Com.* (1894), 162 Mass. 81, 38 N. E. 27; 3 Elliott, Railroads §1138 and cases cited.

At the time of the conveyance by Noah Kellum in 1890, the act of April 8, 1885 (Acts 1885 p. 148) covering cases of this kind, was in existence and made provision,
2. that notwithstanding the conveyance, the grantor may have wagon and driveways across such right of way to other lands owned by said grantor, and that act has since been amended by providing the right for such wagon and driveways over a right of way to a public high-

way contiguous thereto. §5444 Burns 1914, Acts 1899 p. 485. This privilege to cross the right of way was an easement running with the lands when owned by Noah Kellum, and also to successive grantees of the whole tract. 3 Elliott, Railroads, *supra.*

It is apparent that at the time the road was built, 1867, that it was the intention of all parties to the transaction that a crossing was to be built and maintained by the railroad company for the use and benefit of Kellum. No other consideration was paid for the right of way, except such benefits as would result to the public generally and to said grantor in particular to have the road built. Upon the execution of the deed of 1890 the consideration therein named was $27.50. This certainly was not intended to be compensation for the destruction of the crossing which had been built and maintained by appellant and its predecessors for more than twenty years. It is evident therefore than at no time was it ever understood that the several tracts of land owned by Kellum should be severed by the right of way, but that the same should remain one single tract, with the easement to cross said right of way.

The real contention arises in this case, as to the effect the severance of ownership would have upon the question of the right to the crossing. It is conceded by appellee that she had no prescriptive right to the crossing, but contends that by reason of the conveyance to her, by her coheirs of the land on the northwest side of the right of way she took an interest in the crossing for which she has a right to damages for its destruction. We are aware that there is a seeming conflict in the authorities on this question, some holding that where lands are severed by a right of way of a railroad that upon a severance of title that the easement would attach to each separate tract. *Rathbun* v. *New York, etc., R. Co.* (1897), 20 R. I. 60, 37 Atl. 300. Other decisions on the same question take the

position that where lands were severed by the right of way of a railroad, and the title to the several tracts was afterwards severed that the right to the easement is not transmitted to the grantee. *Marino* v. *Central R. Co.* (1903), 69 N. J. L. 628, 56 Atl. 306. In the case of *Speer* v. *Erie R. Co.* (1906), 70 N. J. Eq. 318, 62 Atl. 943 cited by appellee, the court held that the right of an easement was transmitted by deed to subsequent holders of parts of the real estate, on the opposite side of the right of way. In that case a different state of facts existed. The railroad cut nine acres off from the barns and houses which could not be reached without passing over the lands of others, or making a long circuit of three-fourths to seven-eighths of a mile. In that case, as in this it was shown that the lands were platted into small tracts and would be valuable for suburban residences, the crossing in controversy leading to a public highway on which was located an interurban railway. This case was, on appeal, reversed; the court holding that the value of the crossing was to be fixed on the basis that it was a farm crossing, as originally established, and not on the basis that it might be used by suburban dwellers for reaching the interurban railroad. *Speer* v. *Erie R. Co.* (1907), 72 N. J. Eq. 411, 65 Atl. 1024.

There are no facts shown in this case, which would, under any law, entitle appellee to a way of necessity, either from the lands occupied by her to other lands owned by her or to a public highway. If the crossing was maintained it would lead appellee to no lands, owned by her, nor to a public highway within the meaning of §5444 Burns 1914, *supra.* The evidence does not establish any prescriptive right in said crossing, in appellee, neither does it show any right to the crossing as a way of necessity. It must follow that the court erred in refusing to give instruction No. 5 tendered by appellant, and in giving instruction No. 12 of its

own motion. Judgment reversed with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 106 N. E. 401. See, also, under (1) 14 Cyc. 1176; (2) 14 Cyc. 1184, 1193; (3) 14 Cyc. 1199.