# CHARLES C. McTAVISH vs. CHARLES CARROLL.

The owner of a large tract of land upon which was a mill, and a mill-dam and race necessary to the mill, and a road by the side of the race used for repairing it and the dam, conveyed, by deed *of gift,* the portion on which the dam, race and road were situated *without reservation,* and then conveyed by a like deed to another party the portion on which the mill was, both deeds being subject to his own life estate. HELD :

1st. That the grantee of the portion on which the mill was situated was entitled, upon the principle of *legal necessity,* to the use of the dam, race and road in the manner in which they had been used by the grantor.

2nd. But the right to the road is not a private right of way for *ordinary purposes,* but one to be used *only* as occasion requires to repair the race and dam.

3rd. Though the defendant may have obstructed the road at other times by a *fence,* yet if, whenever there was occasion to repair the race or dam, he was ready and willing to remove the obstruction, which was easily removable, and so informed the plaintiff, the latter cannot recover damages therefor.

4th. The fact that the road was ploughed up and *cultivated,* (the *kind* of cultivation not being defined,) would not necessarily create such an *obstruction* as would prevent the convenient use of carts and wagons in repairing the dam and race.

An owner cannot subject one part of his land to another by an easement, because he cannot have an easement in his own property, as the same object is attained through the exercise of the general rights of owner.

But if one owns two closes with a road from the former over the latter to the highway, and sells the latter without reserving in the deed any right of way, he may, if he has no other, use the road over the latter as a way of necessity.

Where the proof of the defendant, if believed by the jury, would establish any proposition inconsistent with the theory of the plaintiff's prayer, based

McTavish *vs.* Carroll.

upon his own evidence, such prayer cannot be granted, because it must assume or admit the truth of all the defendant's proof on the subject.

Where a case comes before the court upon a case stated, the court can make no inference of fact.

APPEAL from the Circuit Court for Howard county.

*Trespass on the case* by the appellee against the appellant, for obstructing a way. Plea, *non cul.*

*1st Exception.* (The pleadings and facts of the case are so fully stated in the opinion of this court, as to render but a brief additional statement of the proof necessary.) The proof on the part of the plaintiff is substantially embodied in his prayer granted by the court below and set out in full in the opinion of this court. On the part of the defendant it was proved in substance, that the fence complained of was a common fence of posts and three or four rails, easily removed or slipped from their places, and was not substantial or permanent, but put up as if intended to be taken down from time to time; that it was useful to him in completing the enclosure of his field, and that a team could be easily driven along and immediately on the west side thereof; that he informed the plaintiff that he was at liberty to remove it whenever he found occasion to repair his race or dam, or if he would not, then defendant's manager would do so at any time plaintiff required it to be removed for that purpose; that if the rails were taken out the posts would not interfere in any manner with the repair of the race; and that the lock on the gate complained of was placed there by him two years prior to the erection of the fence, and that when the plaintiff's manager wished to pass through it he used to apply to the defendant's manager for the key, which was always given him, or the gate opened for his use. The plaintiff then offered the prayer set out in the opinion of this court, which the court below, (BREWER, J.,) granted, and to this ruling the defendant excepted.

*2nd Exception.* The plaintiff then offered to prove that he owned a large body of land around this mill, at which he was accustomed to grind the grain raised thereon, and in conse-

quence of its stoppage had been compelled to wagon his grain to another mill at a greater distance, and claimed as damages the cost of such increased transportation. The defendant objected to this evidence as inadmissible for the purpose under the pleadings in the case, but the court overruled the objection and admitted it for that purpose, to which ruling the defendant excepted.

*3rd Exception.* The defendant offered to prove that some two years ago that the plaintiff, when engaged in repairing the dam and race, raised the heighth of the dam so as to take from the natural stream for his mill a larger flow of water than had theretofore flowed through the race to his mill; but on objection by the plaintiff the court rejected this evidence, and to this ruling the defendant excepted, and the verdict and judgment being in favor of the plaintiff, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*William H. G. Dorsey* and *Thomas S. Alexander* for the appellant, argued at length the following points:

1st. That Charles Carroll, of Carrollton, being the owner of the land on which the dam was erected, and over which the race and road passed, and also of the land on which the mill was built, having conveyed the land on which the dam and race were, with the appurtenances, *without any reservation or exception whatever,* to Mrs. McTavish, subject to his own life estate, could convey to the appellee no right to use the dam, race or road. To sustain this proposition they cited and relied upon the following authorities: 3 *Taunt.,* 99, *Cooper vs. Barber.* 1 *Bos. & Pul.,* 371, *Whalley vs. Thompson.* *Cro. Jac.,* 170. *Act of* 1715, *ch.* 47, *sec.* 10. 1 *Randolph,* 420, *Hayes vs. Bowman.* 5 *H. & J.,* 195, *Browne vs. Kennedy.* *Angell on Water Courses,* 178, *sec.* 9. 2 *Iredell,* 96, *Spencer vs. Spencer.* 17 *Maine Rep.,* 175, *Preble vs. Reed.* 21 *Wend.,* 290, *Burr vs. Mills.* 1 *Rawle,* 108, *Collam vs. Hocker.* 3 *Excheq. Rep.,* 279, *Tatton vs. Hammersley.*

2nd. That if the right of way existed, it was a *secondary easement,* and the owner of the land had all the rights of owner to use the land in any way he saw fit, subject to the *reasonable* enjoyment of the easement. 2 *Cromp. & Mees.*, 266, *James vs. Dods.* 9 *B. Munroe,* 20, *Maxwell vs. McAtee.* 1 *McMullin,* 174, *Barnwell vs. Magrath.* 12 *Eng. C. L. Rep.*, 218, *Back vs. Stacey.* 2 *Metcalf,* 475, *Atkins vs. Bordman.* 32 *Eng. C. L. Rep.*, 548, *Pringle vs. Werham.* Ibid., 560, *Wells vs. Ody.* 3 *Caine's Rep.*, 319, *Palmer vs. Mulligan.* 6 *Excheq. Rep.*, 353, *Embrey vs. Owen.*

3rd. That the court erred in admitting the testimony objected to, because no *special* damage is laid in the declaration, which simply concludes with a general allegation of damages to the extent of $15,000. 1 *Chitty's Pl.*, 338. 2 *Md. Rep.*, 131, *Ellicott vs. Lamborne.* 2 *Greenlf. on Ev.*, sec. 254.

3rd. That the court ought to have admitted the testimony in the third exception, because if the appellee had so *enlarged* his easement as to render it impossible for the appellant to obstruct the excess, without at the same time obstructing the exercise of the easement, he has no right to complain. 10 *Law & Eq. Rep.*, 417, *Renshaw vs. Bean.* 31 *Eng. C. L. Rep.*, 46, *Blanchard vs. Bridges.* 30 *Do.*, 104, *Garritt vs. Sharp.* 8 *Excheq. Rep.*, 187, *Henning vs. Burnet.*

*Charles H. Pitts* and *Grafton L. Dulany* for the appellee, stated that the recitals in the deed to Mrs. McTavish were important to the controversy, as showing an intention in the grantor not to destroy the mill by that conveyance, and that the grant to her and to the appellee took effect, so far as possession of the property conveyed was concerned, at *precisely* the same point of time, viz., the death of the grantor, so that in this respect there can be no *antecedence* of the one to the other. They then argued:

1st. That Charles Carroll, of Carrollton, being the owner of both tracts of land, viz., that conveyed to the appellee, on which the mill is situated, and the one conveyed to Mrs. McTavish, and by her conveyed to the appellant, on which

the dam is and over which the race passes, the dam and race being *appurtenant* to the mill and *indispensable* to its use, a *reservation* of the dam and race, and the right of way upon and along the race for the purpose of repairing the same, *must be presumed;* an *express* reservation was not necessary. 3 *Mason*, 280, *Whitney vs. Olney, et al.* 3 *Kent's Com.*, 420, 424. *Angell on Water Courses, secs.* 90, 155, 158, 163, 167, 358, 361. 5 *H. & J.*, 82, *Kilgour vs. Ashcom.* 21 *Pick.*, 341, *Prescott vs. White.* 8 *Term Rep.*, 50, *Howton vs. Frearson.* 5 *Taunt.*, 311, *Buckby vs. Coles, et al.* These authorities also show that the grant to the appellee of the land on which the *mill* is situated, passed the right to the dam, and race and road, in the condition in which Charles Carroll, of Carrollton, the grantor, had used them. 2 *Md. Rep.*, 416, *Ely vs. Stewart & Speed.*

2nd. That there was no error in granting the appellee's prayer upon the second ground alleged in the appellant's points and argument, because the proof shows that the road was not only *obstructed,* but was *ploughed up* and cultivated.

3rd. That the testimony in the second bill of exceptions was properly admitted, as the declaration sufficiently alleges the damages. There is nothing in the case of *Ellicott vs. Lamborne,* cited on the other side, in conflict with this position, or requiring a more special allegation of damages than that in the present declaration.

4th. The evidence in the third exception was properly rejected. It was not offered to show, and did not show, that we used our right of way in a manner different from that in which we had been accustomed to use it, but only that we raised the dam a few inches higher than it formerly was. By this we did not *change* the easement *prescribed for*, and the effort therefore on the part of the appellant is to give in evidence a *distinct* grievance for which he is entitled to his action if he can maintain it. But we submit that one trespass cannot thus be set off against another, and besides, if he had designed to give this in evidence, he should have given us notice of it by some other *plea* than that of *not guilty.*

ECCLESTON, J., delivered the opinion of this court.

This is an action on the case, brought by C. Carroll, the appellee, against C. C. McTavish, the appellant, for obstructing a road running from the mill of the appellee to his mill-dam, which dam, and the obstructed portion of the road, are on the land of the appellant. The declaration alleges, that the appellee was possessed of an ancient mill, with the right to use the water from a stream on the close of McTavish, through a race running over said close, from the mill-dam to the mill, and to the use of a road running from the mill to the dam, immediately along the bank of the said race, for the purpose of passing with wagons, &c., as occasion required, to clean out and repair the race; and that the appellant placed a fence along the bank of the race, between the race and the road, whereby the road was obstructed, and the appellee deprived of the use thereof, and prevented and hindered from repairing his race, and his mill was rendered entirely useless.

At the instance of the plaintiff, the court instructed the jury, "If they find the deeds offered in evidence by the plaintiff and defendant, and that the plaintiff, on the death of said Charles Carroll, on the 14th of November 1832, came into the full possession of all the property conveyed to him by the deed of the 28th of July 1832, and so continued in possession until this day; and if the jury find that there was a mill on said property, which had been erected thereon some time before the death of said Carroll, and a considerable time or period before the execution of any of the deeds aforesaid, which still remains thereon; and if the jury further believe, from the proof, that there was a race with a road or way upon its western bank or margin, to be used for the reparation of the banks of said race, leading from a dam upon the land of said defendant, which was conveyed to him or them under whom he claims, by said Carroll, who, during his lifetime, and for a long period before his death, used and possessed said race and road, or way, in connection with said mill; and if the jury further find, that from the death of said Carroll, the plaintiff has been in the quiet and peaceable possession of

the land conveyed to him, as aforesaid, with the said mill, and also from the time last aforesaid, did use and enjoy the said race and road, or way, through the lands of the defendant, to and with the said mill, until the 26th of March 1852; and if the jury should also believe that the defendant, on or about the day last aforesaid, erected a post-and-rail fence on the western bank of said race, over and along said road or way, and extended poles across the same near to said dam, and also at a greater distance therefrom, as stated by the witnesses, and that said defendant did also plough up the bed of said road, and reduce the same to cultivation, then the plaintiff is entitled to recover."

The correctness of this instruction is denied by the appellant, upon the ground that Charles Carroll of Carrollton, being the owner of the land on which the dam was erected, and the race and road passed over, and also of the land where the mill stood, having conveyed the land on which the dam and race were, with the appurtenances, to Mrs. McTavish, subject to his own life estate, without any other reservation or exception whatever, his subsequent conveyance to the appellee gave him no right to use the dam, race or road, and consequently the obstructions to the road complained of, could not entitle the plaintiff to a verdict.

Inasmuch as the elder Mr. Carroll owned both parts of the estate whilst he used the mill and its appurtenances, notwithstanding the great length of time he so used the same, it is true he did not thereby acquire or enjoy a right to the dam, race and road, as easements, strictly speaking; for a man cannot subject one part of his property to another by an easement, because he cannot have an easement in his own property, as the same object is obtained by him through the exercise of the general right of property. Nevertheless, under the peculiar circumstances of these transactions, it seems but reasonable that Mrs. McTavish should be considered as having taken her portion of the estate subject to all such mill-rights as were in use at the date of the conveyance to her, and which continued to be used subsequently, and were actually neces-

sary to continue the mill in operation. A different view of the subject would necessarily have placed the use of the mill entirely at the will and pleasure of Mrs. McTavish, or those claiming under her, immediately upon the decease of her grandfather. Such, we think, never was the intention of the grantor, or the expectation of the grantee. Nor do we consider ourselves bound to give such a construction to the conveyance. It was not a sale, but a gift, of one thousand acres of land, part of a large estate containing some six or seven thousand acres. The balance, with the exception of a few acres, was subsequently conveyed to the appellant. And on this portion of the estate the mill-house stood. The mill, therefore, was a kind of property peculiarly valuable to the owner of such an estate. And yet, without the right to use the dam and race, which have been spoken of, the mill is entirely useless.

In the deed to the mother of the appellant, provision is made for securing to her the use of "all the roads, whether private or public," which were then used in going to or from the premises, "and particularly the road leading therefrom to the mill, the private turnpike, and the road leading by Mike's quarter." This provision in regard to the road to the mill, to say the least of it, furnishes no evidence of a design on the part of the grantor to destroy the mill, by that conveyance.

But we think the privilege of using the dam, race and road, may be sustained upon the principle of legal necessity. There are cases where necessity has been held sufficient to secure rights in some degree analogous to those claimed by the appellee.

Where a man owns two closes, A and B, with a road from A over B, to the highway, and sells close B, without reserving, in the deed, any right of way, if he has no other road, he may use the one over B as a way of necessity. There was, at one period, some conflict of authority on this point, but we think it may now be considered settled as we have stated it. 3 *Kent's Com., marginal page* 420.

McTavish vs. Carroll.

Under the title of "Easements of Necessity," this subject is fully examined by *Gale & Whateley*, in their "*Law of Easements*," from *marginal page* 71 to 85.  See also 20 *Law & Eq. Rep.*, 561.

Under the title "Acquisition of easements by implied grant," at *marginal page* 49, of *Law of Easements*, it is said : " Upon the severance of an heritage, a grant will be implied, 1st, of all those continuous and apparent easements which have been used by the owner during the unity, though they have had no legal existence as easements ; and 2ndly, of all those easements without which enjoyment of the several portions could not be fully had." The authors of this work enter very fully into the consideration of rights acquired by implied grants, and refer to numerous cases on the subject.  At *page* 56, will be found that of *Nicholas vs. Chamberlain*, reported in *Cro. Jac.*, 121.  There, "It was held by all the court, upon demurrer, that if one erects a house and builds a conduit thereto in another part of his land, and conveys water, by pipes, to the house, and afterwards sells the house, with the appurtenances, excepting the land, or sells the land to another, reserving to himself the house, the conduit and pipes pass with the house ; because it is necessary and *quasi* appendant thereunto : and he shall have liberty, by law, to dig in the land for amending the pipes, or making them new, as the case requires."  If, in such a case, upon the ground of necessity, the law would permit the owner of the house to retain his right to the conduit, notwithstanding he sold the land through which it passed, and would also continue or give a right of way, to a man, over land which he had conveyed without any express reservation of such a right, it would seem to be a very just conclusion, that under the circumstances of this case, the appellee is entitled to the use of the dam, race and road, in the manner they were used by the elder Mr. Carroll.

In opposition to the claim of the appellee, reference has been made to the case of *Spencer vs. Spencer*, 2 *Iredell's Law Rep.*, 95.  There the defendant claimed the right to flow the water falling upon his land down into and through a ditch

situated on the land of the plaintiff. Both tracts were originally owned by Edward Spencer, who conveyed them to his two sons, Jones and Tucker. The plaintiff claimed under the former, and the defendant under the latter. The deed to Jones bore date the 12th of May 1797, and the other the day after. The first, after describing the land, contained these words, "a privilege of two leading ditches to Tucker Spencer excepted." Nothing was said in regard to the ditches in the second deed.

Judgment was given in favor of the plaintiff, and denying the right of the defendant to use the ditches. In giving the opinion of the court, Ch. J. Ruffin considered the defendant's claim as resting upon the exception contained in the first deed, and said : "Without stopping to consider whether the provision quoted can be regarded as a condition merely, it may be admitted, most strongly against the plaintiff, that the words amount to a grant to Tucker Spencer, the defendant's father. Still there is nothing to annex the grant to the upper tract of land, and transmit it, with the land, to an assignee. Indeed, the deed to Tucker Spencer was not made until the day after, as is to be inferred, *prima facie*, from the dates of the deeds. The grant was, therefore, personal to Tucker Spencer, and the right to the easement expired, at all events, with his life, and did not come to his son and heir, the defendant."

It is evident the decision in that case rested, exclusively, upon the proper construction of the particular exception referred to. And such an exception being in the deed, the court may have considered it as precluding any further or more extensive right, by implied reservation or exception, because *expressio unius est exclusio alterius*. Moreover, it seems the case came before the court upon an agreed statement of facts; in which statement, so far as can be ascertained from the report, there was nothing to show, unless it be by inference only, that it was not merely convenient, but actually necessary, for the land owned by the defendant to be drained through those ditches. And, as in this State, on a case stated, the court can make no inference of fact, we must suppose the

same rule to exist in North Carolina, in the absence of any thing to show the contrary. If so, there was no such necessity before the court as would authorize them to have held, that the defendant was entitled, under an implied reservation, or exception, or grant, to use the ditches, even assuming such an implication was not precluded by virtue of the express exception contained in the deed.

*Burr vs. Mills*, 21 *Wend.*, 290, is a case much relied on in behalf of the appellant. Prior to the date of the deed under which the plaintiff claimed, a dam had been erected, and was standing when the deed was executed; which dam caused the water to flood part of an acre of the land included within the lines of the conveyance to the party under whom the plaintiff claimed. To recover damages for thus causing the land to be flooded, the suit was instituted, and the plaintiff obtained a judgment. The controversy also involved alleged injuries to other property, but the questions decided in reference to them, have no material bearing upon the case before us.

Because the land in dispute was included within the lines of the deed, the court held, that notwithstanding the existence of the dam at the date of the deed, and although the land was then, and had been long before, covered with water, in the same manner it was at the institution of the suit, still there could be no implied reservation or exception in favor of the grantor, which would relieve him, or those claiming under him, from a claim for damages on account of flooding the land.

It will be seen, however, that the learned judge who delivered the opinion of the court, rested the decision, in part at least, and we rather think mainly, upon the ground that if a man has a road from one portion of his estate over another to the highway, and sells the part where the road passes, without reserving it in the deed, the road is gone. And if, in such a case, the road is lost to the grantor, by virtue of the deed, so likewise did the deed take from the grantor all right to continue to flood the land. In this reference to the case of a road, we understand it as one where the party has no other

way from the portion of the estate retained by him, and if so, the denial of his right to use the road, because such a right would be inconsistent with his deed, is certainly at variance with the opinion of Chancellor Kent, and the other authorities to which we have already referred on this subject.   But supposing the judge did not allude to a case where the party has no other road, then the principle of law in reference to rights of necessity, it is fair to infer, was not under consideration, either in regard to the supposed, or to the principal case. And, in truth, although the lowering of the dam so as to prevent the flooding of so inconsiderable a quantity of land, might have produced a trifling diminution of the water power, still the facts disclosed by the report do not justify an inference, that after so reducing the height of the dam, the water power might not have been profitably used by the grantor in the deed, and those claiming under him.   But in the case before us, the adoption of the principle insisted upon by the appellant, will render the mill of the appellee useless for ever.

The principle which allowed a way of necessity, in such instances as we have spoken of, was adopted, because it would be not only a private inconvenience, but also to the prejudice of the public weal, that the land should be unoccupied.   Mills are also of great public utility.   Our early legislation in regard to them, shows they have been so considered here.   And if the law of necessity will apply to private ways, we think it but reasonable it should also be applicable to the present case.

The appellant's position is said to be sustained by the decision in *Preble vs. Reed*, 17 *Maine Rep.*, 175.   The court there say : " The situation of the parties would then be, that of the proprietors flowing their own lands, and afterwards, while thus flowed, granting the thousand acres to Ford, without reserving the right to flow.   And upon such a supposed state of facts, an instruction was given in the case of *Hathorn vs. Stinson*, 1 *Fairf.* 224, which seems to have met the approbation of the whole court, that 'if no such right is reserved, he purchases it with the right to recover damages for

such flowing.' It is where the owner sells the dam and mills, retaining the lands, that he conveys as an essential part of them the right to flow, not where he retains the mills and chooses to sell the land without reserving the right." The portion of the opinion in *Hathorn vs. Stenson,* referred to in support of the doctrine here stated, relates to the third "request" or prayer of the respondent, which is that the court would instruct the jury, "That if the dam, and mills, and land, and No. 49, were owned by the same person or persons, and such owners conveyed the dam, and mills, and land, and privileges, and appurtenances, and *afterwards* conveyed No. 49, the grantee of No. 49 would have no right to claim damages for keeping up the water by the dam, as it had been before the conveyance of No. 49." This instruction, as requested, was not given; but the presiding judge in the lower court gave, in his own language, his views of the law to the jury. In reference to the first branch of which instruction, the appellate court say: "Of the correctness of this instruction there can be no doubt. The statement of facts upon which it was given, supposes an express reservation to the grantor of the right to flow, in which case the grantee would clearly have no right to compensation for injury occasioned by flowing." Then follows the second branch of the instruction, in which is stated the principle relied upon in *Preble vs. Reed.* To this the court say: "We are not disposed to question the correctness of this part of the charge, but it is predicated on a different state of facts from those supposed in the request under consideration, and which the defendant contends he had proved. The facts assumed in the charge are, that the grantor conveyed *the premises flowed,* but retained the mill and dam; the facts claimed to have been proved, and on which the instruction was requested, are, that the grantor conveyed the *mill, dam, privileges and appurtenances,* but retained a portion of the tract flowed. In the latter case, we think the right to keep the dam to the same height it was continued by the grantor, and of course to flow, passed as an incident to the mill, necessary for its useful enjoyment,

and that the grantee acquired an easement in so much of the grantor's land as would be flowed by continuing the head of water at the mill at its usual height. But the grantor's rights, in the former case, would depend upon a very different principle, which it is not necessary should be discussed or decided at the present time, as the facts proved do not require it."

We have made these large quotations for the purpose of showing, as we think they do, very clearly, that the principle extracted from this case in *Preble vs. Reed,* was a mere *dictum* of the judge below, and so considered by the court above. For although they remark, that they are not disposed to question this part of the charge, yet they speak of it as predicated upon facts not presented in the request, or by the proof. And they consider it unnecessary to discuss or decide what would be the rights of the grantor under the facts supposed in the charge, because the facts proved did not require such discussion or decision. Moreover, we find it stated to be no ground for disturbing the verdict, if the instruction was properly withheld, or substantially given; and a new trial is granted, because the instruction was properly requested, and was neither expressly or substantially given.

We, therefore, do not consider that case as an authority for the doctrine which, in *Preble vs. Reed,* it is supposed to have established. Nor was there any necessity for deciding the point in the latter case; the court having previously said:— " The title by which the *Farnham* dam and mills were built, appears to have been that of a tenant in common, who entered upon a portion of the common estate and built a dam and mills upon it, and occupied, perhaps exclusively, such portion of the common estate. He could not rightfully change the character of the estate, or do an injury to other portions of it. He would acquire no right as against his co-tenants to flow." This was a sufficient denial of the defendants' pretensions, without saying more. Afterwards a further denial of their claims is based upon the principle considered by the court, as established in *Hathorn vs. Stinson.*

A circumstance worthy of some consideration, as distin-

guishing the present case from those referred to by the appellant, is, that the two deeds from the elder Mr. Carroll, gave to both grantees the right of *possession*, at the same time, the decease of the grantor, he having reserved a life estate to himself in both parcels of land.

The appellant's second point, raising a further objection to the instruction given, is, that "if the right of way existed, the owner of the land had all the rights of owner, subject to the reasonable enjoyment of the easement."

Under this point it was contended, that the road could not be used by the appellee for any other purpose than to repair the dam or race, and that if the road was obstructed at other times, yet if, whenever there was occasion to repair the race or dam, the appellant was ready and willing to remove the obstructions, and so informed the appellee, then the plaintiff was not entitled to a verdict; and although the obstructions enumerated in the prayer may have been put upon the road, yet in the face of the defendant's proof, the instruction should not have been given.

It is certainly true, that when the proof of the defendant, if believed by the jury, would establish any proposition inconsistent with the theory of the plaintiff's prayer, which is based upon his own evidence, such prayer cannot be given, because it must assume or admit the truth of all the defendant's proof on the subject.

Although the defendant may have put upon this road the obstructions mentioned in the prayer, still the plaintiff was not entitled to a verdict, if the jury believed the truth of the defendant's evidence in regard to the manner in which the road had been used, and in reference to the nature, character and structure of the obstructions, and the willingness and readiness of the defendant to have the obstructions removed whenever the plaintiff had occasion to repair the dam and race, and that the plaintiff was informed of such readiness and willingness, and that he or his agents might remove them, if he or they thought proper to do so; which obstructions were so constructed as to be easily removed.

Looking to the very special nature of this easement, and viewing the proof in defence, we do not think the prayer should have been given.

This is not a private right of way for ordinary purposes, but one to be used only as occasion might require, to repair the race and dam; the right of property over the same, in the defendant, being abridged to that extent *only.*

In *Angel on Water Courses, section* 165, may be seen how strictly are to be construed secondary easements, pertaining, from necessity, to water rights. It is there said: " But the doctrine, in its application to water rights, must be understood as applying to such things only as are incident to the grant, and *directly* necessary for the enjoyment of the thing granted. If, for instance, a person grant to another the fish in his pond, the grantee cannot cut the banks to lay the ponds dry, for he may take the fish by nets or other engines." And again: "A way of necessity to a water course would be, therefore, limited to the necessity which created it, and when such necessity ceases, the right of way will also cease." In the following section the writer treats of the difference between what is *necessary,* and what is merely *convenient,* or desirable, and shows that the former is the ruling principle, and not the latter.

If, in view of the defendant's proof, so much of the plaintiff's prayer was erroneous as based his right to recover upon the erection of the fence, and extending poles across the road, the prayer was not rendered proper, because of the ground taken therein, in reference to ploughing and cultivating the road. The sort of cultivation is not mentioned. And there are different modes of cultivation; some of which, in particular stages of it, would create no such obstruction as could prevent carts and wagons from being used with convenience, in repairing the dam and race.

A reversal upon the first exception, requires the case to be sent back again under a *procedendo;* but we did not deem it necessary to decide the other questions presented by the record, because, considering the relation in which the parties

stand toward each other, and inasmuch as this decision settles the important questions in regard to their rights, we hope the case may now be adjusted without further controversy.

*Judgment reversed and procedendo awarded.*