## CHARLIE TONG v. JACOB FELDMAN et al.

*Easement of Necessity—Piping Gas Through Lower Floor— Enlargement of Appliances—Duplicity in Pleading—Misjoinder of Defendant.*

Under an allegation of a right by implied reservation, equiv-- alent to an easement of necessity, to bring gas for the tenant of an upper floor through a meter and pipe in the cellar, the jury may find the presence of the gas meter in the cellar a necessity, upon proof.                              pp. 401, 402

Rights or easements of necessity are not confined to rights of way.                                                       p. 402

A right or easement of necessity may accrue to the grantor who severs the tenements or to his subsequent grantees.    p. 402

It is only in cases of the strictest necessity, and where it would not be reasonable to suppose that the parties intended the contrary, that the principle of implied reservation can be invoked.                                                      p. 402

The right to continue piping gas to upper floors through the lower floors is, under modern conditions, a right which it is unreasonable to suppose that the parties to a lease of the lower floors could intend to cut off, and the reservation of such right may be implied as an easement of necessity .　　　p. 402

One who enjoys a right or easement over or through the premises of another may enter, at reasonable times at least, to make proper repairs.　　　p. 402

Alterations may be made in the ways or instrumentalities of an easement of necessity.　　　pp. 403, 404

The tenant of the upper floors of a building, who has an easement of necessity to procure gas by means of pipes and a meter in the cellar, may substitute larger pipes and a larger meter, when his reasonable use of the upper floors requires a greater supply of gas, provided this does not interfere with the reasonable enjoyment of the cellar.　　　p. 405

Where the first count of a declaration alleged that plaintiff, as tenant of the upper floors of a building, had a right to bring gas through the lower floors, occupied by defendants, and that defendants, by force and threats, prevented plaintiff from doing this, a second count, which alleged the same facts, and that defendants, by threats and false statements, induced another, who had contracted to take a sublease of such upper floors, to break his contract, was not bad for duplicity, it stating in effect a single cause of action, that by the acts and events stated in the first count, plaintiff was left with an obligation for rent, except in so far as another tenant could be substituted, and that defendants induced a prospective tenant to break his contract, so that plaintiff sustained a loss.　　　p. 406

If a declaration contains several counts, joint participation of all the defendants sued must be averred in each one of them.　　　p. 407

*Decided March 3rd, 1927.*

Appeal from the Superior Court of Baltimore City (ULMAN, J.).

Action by Charlie Tong against Jacob Feldman and Murray Feldman. From a judgment for defendants, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, AD-KINS, OFFUTT, DIGGES, and PARKE, JJ.

*Joseph S. Goldsmith,* with whom was *Henry J. Broening* on the brief, for the appellant.

*H. Harry Rosenberg,* for the appellees.

BOND, C. J., delivered the opinion of the Court.

This appeal is from the sustaining of a demurrer to the appellant's third amended declaration. He alleged that Jacob Feldman and he, respectively, were lessees of separate portions of a building in Baltimore City, and that Jacob Feldman's interference with a right claimed to bring gas through his, Feldman's, portion rendered it impossible for the plaintiff to exercise his rights under his lease and to carry on the business for which he had entered into it. And it is also alleged that the two defendants, Jacob Feldman and Murray Feldman, jointly prevented a re-leasing of the floors then abandoned by the plaintiff, which had been arranged with a view to avoiding the necessity of the plaintiff's paying further rent for them.

More specifically, it is alleged in a first count of the declaration that Jacob Feldman leased the first floor and cellar of the premises known as 939 West Baltimore Street, for a term of three years beginning on February 10th, 1923, and that on June 15th, 1924, the plaintiff leased the second and third floors of the building for use as a restaurant. A gas meter and pipes for providing gas to the upper floors were located in the cellar leased to Feldman. After having made costly improvements and alterations on the upper floors to adapt them to use for the restaurant, it was found that the business required a larger supply of gas; and the plaintiff, being required by his lease to make his own alterations, arranged with the company supplying the gas and equipment for the substitution of a meter six inches higher than the older one, and three inches deeper, and a pipe one-quarter

of an inch larger in diameter. It is also alleged that there was a right generally recognized and well established, under similar conditions, in an occupant of upper floors, to obtain adequate supplies of water and gas by means of pipes through the cellar and first floor, and a right of access by the gas company to the meter and pipes for all proper repairs or alterations, and that Feldman took subject to such rights. When the gas company undertook to make the changes requested in this case, however, Feldman by force and threats prevented it, and as a consequence the plaintiff was compelled to abandon his business and his lease of the upper floors. In a second count the same facts are alleged, and it is added that the defendant Murray Feldman, "in furtherance of the plans and schemes jointly undertaken by the said Jacob Feldman and himself," did by threats and false statements to a new lessee obtained for the abandoned second and third floors, to the effect that he would not be permitted by the defendants to have either gas or water, induce such new lessee to break his contract and refuse to enter into possession. And for these alleged wrongs damages are demanded.

As to the first count, the declaration, and much of the argument, seem to us to be based on conceptions which do not reach to the precise questions involved. Those questions, as we see them, may be stated in this way: In the situation described, would the lessee of the upper floors have a right by implied reservation, equivalent to an easement of necessity for bringing gas through the cellar for use above? If there is such a right or easement of necessity, is it confined to the meter and pipe previously in use on the premises, or does it vary with the necessity, so that an increased need may be met by some enlargement of the meter and the pipe?

We think the declaration does, in effect, allege a right by implied reservation equivalent to an easement of necessity for bringing gas for the upper tenant through the pipe in the cellar. It is, of course, common knowledge that gas is piped into a building from underground. Whether the meter

need be placed in the cellar, as it usually is, may, for all that we know, be questioned, but there is an allegation of a right to have the meter there, and a jury might find this to be a necessity, upon proof: Rights or easements of necessity are more familiarly met with in rights of way, but they are not confined to such rights. One of the leading illustrations of an easement of necessity in other rights is in the case of *McTavish v. Carroll,* 7 Md. 352, in which a right to use a dam and a mill race on the land of one grantee passed by necessity with a grant of a mill to another grantee. And for other illustrations see a collection of authorities in a note, 8 *L. R. A.* (N. S.) 327, on "Implication from necessity of easement other than right of way." And see also note 10 *Eng. Rul. Cas.* 59.

A right or easement of necessity may accrue to the grantor who severs the tenements or to his subsequent grantees. *Jay v. Michael,* 92 Md. 198, 210; *Mitchell v. Seipel,* 53 Md. 251, 269; *Burns v. Gallagher,* 62 Md. 462, 472; *Lippincott v. Harvey,* 72 Md. 572, 579; *McTavish v. Carroll, supra; Mancuso v. Riddlemoser Co.,* 117 Md. 53, 56. The necessity must be imperative and absolute. "It is only in cases of the strictest necessity, and where it would not be reasonable to suppose that the parties intended the contrary, that the principle of implied reservation can be invoked." *Burns v. Gallagher, supra.* Ordinarily it is to be presumed that the grantor has made all the reservations he intended, when making his grant, and he is not permitted to contradict or derogate from his grant. But we think the right to continue piping gas through lower floors would, under modern conditions, come within those which it would be unreasonable to suppose the parties could intend to cut off.

That one who enjoys a right or easement over or through the premises of another may enter, at reasonable times, at least, to make proper repairs, would hardly be questioned now. *McTavish v. Carroll, supra; Washburn, Easements,* 2 Ed. 656. But what is the case with alterations; may any

enlargement ever be made of the ways or instruments of necessity first made use of?

There have been many decisions upon changes made or attempted by owners of easements in the enjoyment of them, and as with discussions on other questions in the law of easements, the theories and principles stated have not been uniform. Of course, a restriction in a grant or an express reservation must be given effect to its full extent, properly construed. But there is nothing in the nature of a right reserved or an easement, apart from an express prohibition, which prevents all change during the course of its enjoyment. It has been decided many times that there might be increases in the volume and kind of use. *United Land Co. v. G. E. Railway Co.,* 10 Ch. App. 586; *White v. Grand Hotel* (1913), 1 Ch. 113. In *Myers v. Dunn,* 49 Conn. 71, a way of necessity to wood, pasture and arable land was held open to the increased use resulting from the erection of other improvements. "When," said the court, "by their conveyance to the defendant's grantor the administrators imposed, in favor of the land granted, a way of necessity over the *locus in quo,* they are to be presumed to have intentionally done it for any or all of these purposes [for which the land might be exploited]; and the law will declare that it may be used for all, for it desires and encourages proprietors to increase the value of their land by building houses upon and cultivating it." And that was the decision in the similar cases of *Whittier v. Winkley,* 62 N. H. 338; *Uhl v. Railroad Co.,* 47 W. Va. 59; *Crosier v. Shack,* 213 Mass. 253. And see *Jones on Easements,* sec. 323.

And alterations may be made in the ways or instrumentalities of an easement of necessity. In *David v. Kingscote,* 6 M. & W. 174, it was held proper to lay tracks on an old way to work mines on the dominant estate. In *Newcomen v. Coulson,* 5 Ch. Div. 133, a right of way was granted under an award, for the passage of the grantees, their tenants or farmers, vehicles and horses, to and from land which was at the time devoted to agriculture. Later, buildings were put up and a metal road was laid down where there had been

only a cart track. And Jessel, M. R., held that under the unrestricted grant of the way, the owners of the easement might make the new road bed. "It cannot be contended," said the Master of the Rolls, "that the word 'repair' in such a case is limited to making good the defects in the original soil by subsidence or washing away; it must include the right of making the road such that it can be used for the purpose for which it is granted." In *Olcott v. Thompson,* 59 N. H. 154, the cover of an aqueduct maintained by prescriptive easement was reconstructed, and it was held that the form of cover was restricted only by the reasonable necessity of the case, and was not restricted to a form previously used. There was no injury to the landowner from the change; and the reconstruction was taken to be within the grant which was assumed in support of the prescriptive rights. And see authorities in note, *L. R. A.* 1918A, 593. "Adaptation, improvement and repair of right of way."

Some of the decisions on alteration in the instrumentalities of easements seem to make no distinction as to alterations which involve slight enlargements, and it seems obvious that some variations in size must be insignificant. To take an extreme case, the use of a larger joint or nut on an appliance, would probably be without any detriment to the enjoyment of the servient tenement, and held within the proper enjoyment of an easement. And the allegations in the present declaration show an intended change of dimensions which, for all this court can say, might be found by a jury to be altogether insignificant under the circumstances. In *Hammond v. Hammond,* 258 Pa. 51, a right of way had been granted in general terms to cross a creek and connect with a highway. For twenty-one years the crossing was made by a ford, and then the owner of the easement built a bridge. And the court said that, "The grantee of the free and uninterrupted use of a private road may improve it in such manner as to make it fit for the purpose expressed in the grant, and in so doing may construct a bridge over a ravine or creek, if it be done in such way as to cause the least practicable damage to the owner of the servient tenement; however,

ample room must be left for the natural flow of the water,
even in time of flood, except it be so great as to be beyond
ordinary human experience." And that seems to us to be the
reasonable view of the situation.

The test to which the decisions hearken back is the pur-
pose for which the right or easement has been established.
Whenever it has arisen from necessity, it would seem to be
co-extensive with the reasonable needs present and future of
the dominant estate for such a right or easement, and to vary
with the necessity, in so far as may be consistent with the
full reasonable enjoyment of the servient tenement.   Here
the severance of the two tenements was made by the lease to
Feldman, and he took subject to an implied right of necessity
for the conduct of gas to the upper floors.   Two rights in
space in the cellar were created, and they are equal in legal
value and are to be reconciled in practice.   There was no
express restriction to the meter and pipe already in the cellar,
or to anything less than the reasonable necessity of the occu-
pant of the upper floors.   And we see no satisfactory theory
upon which the necessity of the upper tenant can be so re-
stricted, assuming that his use, out of which the necessity
arises, is a reasonable use of the premises.   The presence of
equipment for an earlier and lesser use cannot be taken to
restrict the right unless it can be said that there is a restric-
tion to a necessity already provided for; and such a restric-
tion as that might often bind a dominant tenement to a nar-
row, or even obsolete, use, in disregard of natural growth of
usefulness of the property.   And it would be contrary to the
decisions of the authorities cited above on growing uses.   A
present necessity, which would determine for a wholly new
right the size of instrumentalities to be used, ought logically
to determine it none the less because of the presence of old
equipment on the servient estate.

The correct principle seems to us to be that the tenant
of the upper floors might have such an adaptation made of
his meter and pipe although it include some enlargement, if
the projected changes do not materially interfere with Feld-
man's reasonable enjoyment of the cellar, in which they are

located. And we think the allegations of the appellant in the
first count are sufficient to entitle him to proceed with his
case on that principle. A restaurant would seem to be an
ordinary use of premises; only special circumstances would
justify holding it to be an unnatural, excessive use, the
necessities of which may be disregarded.

There are minor objections made to specific allegations of
the first count, but we find no material shortcoming in any
of them. They appear to us to inform the defendants, with
ample fullness, of the case they are to meet.

What has been said here of the first count would apply, of
course, to the first part of the second count in so far as it
might be made the subject of separate objection. It is
argued, however, that the addition, in this second count, of
the allegation that Murray Feldman, acting in furtherance
of plans and schemes jointly undertaken by Jacob Feldman
and himself, by threats and false statements of inability to
get water and gas, procured a new lessee to break his con-
tract, makes the whole count, and the whole declaration, bad
for duplicity. The substance and effect of the count as a
whole is that by the acts and events stated as in the first
count, the plaintiff was left with an obligation for rent to the
end of his term except in so far as another tenant could be
substituted, that another tenant was obtained and an agree-
ment made with him, but that the two defendants, Murray
Feldman and Jacob Feldman, wrongfully procured the new
tenant to break his agreement, so that the plaintiff sustained
a loss by that action. So read, there seems to be no duplic-
ity in the count. It is upon a single cause of action, and one
which if sustained by proof would entitle the plaintiff to re-
cover. *Lucke v. Clothing Cutters' Assembly,* 77 Md. 396;
*Sumwalt Ice and Coal Co. v. Knickerbocker Ice Co.,* 114 Md.
403; *Cumberland Glass Mfg. Co. v. DeWitt,* 120 Md. 381.

But the joinder of Murray Feldman as a defendant when
he had, so far as appears from the allegations, nothing to do
with the action complained of in the first count, does con-
stitute a defect, for if a declaration contains several counts,

joint participation of all the defendants sued must be averred in each one of them. 1 *Poe, Pl. & Pr.,* sec. 527. And for that defect alone we find that the demurrer to the declaration should have been sustained, and the judgment must be affirmed accordingly. As, however, it apears to us that the plaintiff could correct this misjoinder by amendment and state a sufficient cause of action, we conclude 'that the judgment should, to the end that an amendment may be made, be affirmed, and remanded for a new trial under article 5, section 24 of the Code. *State, use of Dodson, v. Balto. and Lehigh R. Co.,* 77 Md. 489; *Milske v. Steiner Mantel Co.,* 103 Md. 235, 252.

> *Judgment affirmed and cause remanded for a new trial, the appellant to pay costs.*