HYMAN BLUMBERG, complainant-respondent,

*v.*

MAX WEISS and LENA WEISS, his wife, defendants-appellants.

[Argued May 29th, 1940.  Decided January 28th, 1941.]

*Mr. Jacob L. Winograd* and *Mr. Samuel S. Stern,* for the appellants.

*Mr. Samuel F. Kanis* (*Mr. Henry T. Stuhr,* of counsel), for the respondent.

The opinion of the court was delivered by

HEHER, J.

The common owner of two contiguous lots, each occupied by a dwelling house, conveyed one by deed of general warranty with full covenants; and the question at issue is whether there was a reservation by implication of a *quasi*-easement of light and air in favor of the parcel retained as the dominant tenement.

These are the pertinent circumstances: At the time of the separation of the title, the house on the asserted dominant

tenement extended, the full width thereof, beyond the rear line of the adjacent house conveyed; and the easement is affirmed in respect of windows in the wall along the division line overlooking the vacant portion of the lot conveyed. The declared dominant tenement also has a rear yard.

The learned Vice-Chancellor, conceiving that he was bound by the principle of the case of *Central Railroad Co.* v. *Valentine, 29 N. J. Law 561,* ruled that the "windows were apparent" to the grantee, and there was an implicit reservation of such easement, since it "is necessary to the beneficial enjoyment" of the dominant tenement, so-called.

The inquiry therefore is whether, upon the conveyance, the claimed easement arose by implication of law or of fact. There is no suggestion of an easement by prescription. Prior to the severance of ownership, there was a unity of seisin of the alleged dominant and servient tenements, and so there could not be the adverse user essential to the establishment of a right grounded in or presupposing a lost grant. In this state it was early declared to be the rule that only those easements which are "apparent and continuous" pass as appurtenant on the partition of the heritage. Those not rising to that dignity are not incident to the grant, and are not included therein "unless the grantor uses language in the conveyance sufficient to create the easement *de novo,*" or it is a way of necessity. *Seymour* v. *Lewis, 13 N. J. Eq. 439; Fetters* v. *Humphreys, 19 N. J. Eq. 471; Stuyvesant* v. *Woodruff, 21 N. J. Law 133; Stanford* v. *Lyon, 22 N. J. Eq. 33; Newhoff* v. *Mayo, 48 N. J. Eq. 619; Hazeldine* v. *McVey, 67 N. J. Eq. 275; Georke Co.* v. *Wadsworth, 73 N. J. Eq. 448; Suffield* v. *Brown, 4 De Gex, J. & S. 185.*

And there is no basis for the view that the parties designed to create such servitude upon the severance of the title. Necessity was the genesis of the doctrine of *quasi*-easements by implication; and it was at first confined to ways of necessity, although it has been greatly enlarged. *Seymour* v. *Lewis, supra.* Here, the grant did not provide in terms for the claimed easement. Indeed, there was a solemn covenant against encumbrances; and the reservation of a way of necessity by implication has always been deemed an

exception to the rule that a grantor may not be heard in derogation of his grant, grounded in these considerations: In the absence of express provision to the contrary, it is entirely reasonable to presume "an understanding of the parties that the one selling a portion of his land shall have a legal right of access over the part sold to the remainder if he cannot reach it in any other way;" and also that "it is *pro bono publico* that the land should not be unoccupied." *Vandalia Railroad Co.* v. *Furnas, 182 Ind. 306; 106 N. E. Rep. 401; Collins* v. *Prentice, 15 Conn. 39; Tong* v. *Feldman, 152 Md. 398; 136 Atl. Rep. 822; 51 A. L. R. 1291; Dutton* v. *Taylor, Lutw. 1487; 125 Reprint 819; 19 C. J. 926.*

Whatever the extension of the original doctrine, it is now generally recognized that there is a distinction between an implied grant and an implied reservation of a *quasi*-easement, and that those of the latter class are not, except possibly in the case of strict necessity, raised by implication, since the grant is, on well-settled principles of interpretation, to be viewed most strongly against the grantor, and is not ordinarily subject to modification by parol; and it is incumbent on the grantor, if he would reserve an easement, to make such the subject of express provision in the deed. *Toothe* v. *Bryce, 50 N. J. Eq. 589; Weisel* v. *Smira, 49 R. I. 246; 142 Atl. Rep. 148; 58 A. L. R. 818.* In *Suffield* v. *Brown, supra,* Lord Chancellor Westbury said: "It seems to me more reasonable and just to hold that if the grantor intends to reserve any right over the property granted, it is his duty to reserve it expressly in the grant, rather than to limit and cut down the operation of a plain grant (which is not pretended to be otherwise than in conformity with the contract between the parties), by the fiction of an implied reservation. If this plain rule be adhered to, men will know what they have to trust, and will place confidence in the language of their contracts and assurances. * * * That the purchaser had notice of the manner in which the tenement sold to him was used by his vendor for the convenience of the adjoining tenement is wholly immaterial, if he buys the fee-simple of his tenement, and has it conveyed to him without any reservation. To limit the vendor's contract and deed of convey-

ance by the vendor's previous mode of using the property sold and conveyed is inconsistent with the first principles of law, as to the effect of sales and conveyances. * * * But I cannot agree that the grantor can derogate from his own absolute grant so as to claim rights over the thing granted, even if they were at the time of the grant continuous and apparent easements enjoyed by an adjoining tenement which remains the property of him the grantor. * * * And the analogy, if it be worth grave attention, fails in the case to be decided, for when the owner of two tenements sells and conveys one for an absolute estate therein, he puts an end, by contract, to the relation which he had himself created between the tenement sold and the adjoining tenement; and discharges the tenement so sold from any burthen imposed upon it during his joint occupation; and the condition of such tenement is thenceforth determined by the contract of alienation and not by the previous user of the vendor during such joint ownership." He found distinguishing factors in the case of two interdependent tenements, e. g., two adjoining houses "so constructed as to be mutually subservient to and dependent on each other, neither being capable of standing or being enjoyed without the support it derives from its neighbour; in which case the alienation of one house by the owner of both would not estop him from claiming, in respect of the house he retains, that support from the house sold, which is at the same time afforded in return by the former to the latter tenement * * *; but where the right claimed in respect of the tenement retained by the joint owner against the tenement granted by him is separable from the former tenement, it is severed and either passed or extinguished by the grant. It must be always recollected that I have been speaking throughout of cases where (as in the present case) the easement claimed had no legal existence anterior to the unity of possession, but is claimed as arising by implied grant or reservation upon the disposition of one of two adjoining tenements by the owner of both; which is in my opinion an ingenious but fanciful theory, which is, as to part, not required by, and is as to the other part wholly inconsistent with, the plain and simple principles of English law that

regulate the effect and operation of grants of real property." We have quoted thus at length from this English case, decided in 1864, since the common law is invariably invoked in support of easements of this nature. And in *Crossley* v. *Lightowler, 2 Ch. App. 478,* Lord Chelmsford commented upon the case as follows: "I entirely agree with the view. It appears to me to be an immaterial circumstance that the easement should be apparent and continuous, for *non constant* that the grantor does not intend to relinquish it unless he shows the contrary by expressly reserving it."

This differentiation is to be made between an implied grant and an implied reservation of a *quasi-*easement: The former is apparent and continuous, and passes as an incident of the estate conveyed, and is therefore wholly consonant with the grant itself, while the latter is ordinarily in opposition to the grant, certainly so where it is accompanied by full covenants. The general rule that a grantor shall not be heard in derogation of his grant, and the covenants annexed thereto, is but the formulation of the principle that a written instrument purporting to incorporate the entire agreement of the parties speaks for itself, and is not subject to variation by parol. *Dieckmann* v. *Walser, 114 N. J. Eq. 382; Tong* v. *Feldman, supra; Suffield* v. *Brown, supra.* Ordinarily, it is only just to assume that the grantor has expressly provided in the deed for all intended reservations. He is not thereby burdened with an onerous duty. It makes for certainty in the titles to real estate. Servitudes are not a matter for mere intendment in conflict with the terms of the grant.

And this doctrine is especially applicable to easements of light and air. Such easements by implication are a development of the common law when land was sparsely settled, and community life comparatively simple; and it is now obsolete since not adapted to modern conditions in this country. It has its true foundation not upon reasons of sound public policy, but rather upon the mutual assent of the parties to the grant. Under such general policy, urban communities would be greatly hindered in their physical development. Land in the centers of population could not be put to its most effective use, and the public interest would be thereby

plainly disadvantaged. Comprehensive planning and zoning are now the means by which the common need in this behalf is served. And it would also run counter to the statutes requiring notice of encumbrances against realty, and thus unsettle the title to land. The prospective grantee would find it difficult, if not altogether impossible, to determine whether the lands were so encumbered, and, if so, to what extent.

Even at common law, the landowner has no legal right, in the absence of an easement, or uninterrupted use and enjoyment for a period of twenty years, to unobstructed light and air from the adjoining land. Ordinarily, landowners have an equal right under the law to build to the line of their respective tracts. In so doing, they are merely exercising a legal right, and, by the same token, there is no infringement of the rights of the adjoining owner. It would seem to be axiomatic that this basic right of ownership cannot be lost by the mere lapse of time. The English doctrine of ancient lights does not obtain in this state. *King* v. *Miller, 8 N. J. Eq. 559;* *Hayden* v. *Dutcher, 31 N. J. Eq. 217;* *Bloom* v. *Koch, 63 N. J. Eq. 10.* See, also, *Cerra* v. *Maglio, 98 N. J. Eq. 481; affirmed, 100 N. J. Eq. 341,* and *Engel* v. *Siderides, 112 N. J. Eq. 431.*

There is no occasion to determine whether—and, if it may, under what circumstances—the grant of an easement of light and air may arise by implication. It would seem that on principle such a grant should not be made to rest upon implication of fact or of law, unless reasonably deducible from the grant itself, considered in relation to the subject-matter, as within the common intention of the parties, or it is grounded in real and obvious necessity. *Vide, Robinson* v. *Clapp, 65 Conn. 365; 32 Atl. Rep. 939; Rennyson's Appeal, 94 Pa. St. 147; Keats* v. *Hugo, 115 Mass. 204; Lucier* v. *Dube, 280 Mass. 1; 181 N. E. Rep. 709; Douglas* v. *Lehman, 62 App. D. C. 264; 66 Fed. Rep. (2d) 790; Tong* v. *Feldman, supra; Baird* v. *Hanna, 328 Ill. 436; 159 N. E. Rep. 793; 56 A. L. R. 1133; Knight* v. *Mitchell, 154 Md. 102; 140 Atl. Rep. 74; Hasselbring* v. *Koepke, 263 Mich. 466; 248 N. W. Rep. 869; 93 A. L. R. 1170; Parker* v. *Foote, 19 Wend. 309; Tunstall* v. *Christian, 80 Va. 1.* But the reso-

lution of this question may well await a case in which it is directly raised. While recognizing that the prevalent view in this country is to the contrary, this court has declared that the doctrine of "implied easements" of light and air has been accepted as part of the common law of our own state, * * * and is too deeply imbedded in our jurisprudence to be now disturbed by judicial action," and that the determinative is whether the easement is "necessary to the beneficial enjoyment of the land granted or retained." *Engel* v. *Siderides, supra.* That case concerned merely an easement by implied grant; and it is therefore not an authority for the proposition that *quasi*-easements by implied reservation fall into the same category. As noted, even the common law recognizes that different considerations govern easements of the latter class.

Plainly, there was no reservation of the alleged easement by implication of law—such, for instance, as public policy might deem needful irrespective of the common intention of the parties. And there is no foundation, not even the slightest, for a finding of such an easement by implication of fact. There are no special circumstances reasonably tending to show that that was in all human likelihood within the contemplation of the parties to the conveyance—*i. e.,* the separation of the tenements upon the hypothesis of the continued existence of such a servitude. There is an utter lack of manifestation of mutual assent to the imposition of this burden upon the estate conveyed. The claimed easement does not spring from contract, express or implied, and so has no existence. The law will not presume an intention to create such easement merely from the absence of express provision to the contrary.

The subject-matter of *Central Railroad Co.* v. *Valentine, supra,* was not an easement of light and air, but one having different elements. While the opinion contains declarations at variance with the foregoing, they are clearly *dicta* in conflict with what we deem to be sound doctrine, and therefore not controlling. And, for the foregoing reasons, such cases as *City National Bank of Salem* v. *Van Meter, 59 N. J. Eq. 32; affirmed, 61 N. J. Eq. 674,* are not conclusive.

The decree is accordingly reversed; and the cause is remanded with direction to dismiss the bill of complaint.

*For affirmance*—Donges, Dear, Wells, JJ. 3.

*For reversal*—The Chief-Justice, Parker, Case, Bodine, Heher, Perskie, Porter, WolfsKeil, Rafferty, Hague, JJ. 10.