2008 OK CIV APP 2

**James Douglas MOSS, Plaintiff/Appellant,**

v.

**Judy Gayle MOSS, Defendant/Appellee.**

**No. 103,715.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Dec. 14, 2007.

Austin R. Deaton, Jr., Deaton, Davidson & Kessinger, P.C., Ada, OK, for Appellant.

J. David Pyle, Ardmore, OK, for Appellee.

JERRY L. GOODMAN, Judge.

¶ 1 James Douglas Moss (Brother) appeals the trial court's July 31, 2006, order which found Judy Gayle Moss (Sister) retained a life estate in property owned by Brother and which divided partnership assets between the two. We affirm in part, reverse in part, and remand with directions.

## FACTS

¶ 2 The siblings' parents owned 149 acres in Murray County. Calvin, their Father, held fee title to 3/4 (three-quarters) of the property with the remaining 1/4 (one-quarter) held in joint tenancy with Letha, their Mother.[1] They had 11 children when Father died intestate in 1985. His property interests passed to his wife and all their children: 22/66th to Wife, and 4/66 to each of the eleven children.

¶ 3 Between 1989 and 1993, eight of the eleven children (including Brother) conveyed all their right, title, and interest, without reservation, to Mother. Two children did not convey their interests immediately. Sister executed a quit claim deed in favor of Mother on May 2, 1995, containing the following language in the granting clause, following the legal description of the property:

> *This transfer is subject to the retention of the rights of survivorship* by and for Judy Gayle Moss. (Emphasis added.)

The habendum clause states:

> "To Have and to Hold the above described premises unto the said party of the second part, *subject to the retention of the rights of survivorship ....*" (Emphasis added.)

At the conclusion of all of these transactions, Mother owned 58/66ths of the property with the remaining 8/66ths owned by another son and another daughter.

---

1. A second adjacent parcel of property was acquired by Father, but it is not the subject of this litigation.

¶ 4 Mother then conveyed by quit claim deed all of her rights to the property to Brother, with the following language:

> This transfer is subject to the retention of the rights of survivorship by and for myself, Letha L. Moss and the retention of the rights of survivorship by and for my daughter, Judy Gayle Moss.

¶ 5 The habendum clause included the following language:

> subject to the retention of the rights of survivorship as above stated.

¶ 6 Mother died testate in 2000. She owned no real property at the time of her death, having conveyed all her property interest to Brother. Following probate of her will, the two remaining children who had not previously conveyed their 8/66th interest in their father's property now conveyed their rights to Brother by quit claim deed, with the following language: "All subject to life estate of Judy Gayle Moss."

¶ 7 Brother and Sister lived on the real property and conducted a cattle ranching partnership until that relationship ended in 2005. Brother filed suit May 10, 2005, seeking quiet title to the property and a dissolution of the partnership and its assets. Evidentiary hearings were held January 20 and March 17, 2006.

¶ 8 At these hearings, various deeds and probate orders regarding the property were received in evidence. No testimony was offered regarding those deeds. Brother testified exclusively about the partnership; Sister did not testify. At the conclusion of the hearing, the trial court entered an order, filed July 31, 2006, in which it held Sister had a life estate in Brother's property, based on its interpretation of the deeds and orders. The court further dissolved the partnership and divided its assets. Brother appeals.

2. Had the deed not been ambiguous, the trial court would have been precluded from looking beyond the deed itself for interpretation.

3. Indeed, the precise language chosen suggests the grant of the property was not absolute. After granting the subject property, the granting clause concludes: "This transfer is subject to the retention of the rights of survivorship by and for Judy Gayle Moss." Arguably, one could conclude Sis-

## STANDARD OF REVIEW

¶ 9 Interpretation of a deed is a question of law. Questions of law are reviewed by this court using a de novo standard. *Villines v. Szczepanski,* 2005 OK 63, ¶ 8, 122 P.3d 466, 470; *Booth v. McKnight,* 2003 OK 49, ¶ 12, 70 P.3d 855, 860.

## ANALYSIS

¶ 10 Neither party contended the deed was ambiguous. The trial court evidently relied on extraneous evidence to ascertain the meaning of the phrase, "This transfer is subject to the retention of the rights of survivorship by and for Judy Gayle Moss." Therefore, it apparently believed the phrase to be ambiguous, and indeed it is patently ambiguous. It cannot be interpreted by relying solely on the four corners of the document.[2]

¶ 11 The language, as written, purports to reserve "rights" relating to the fee title being conveyed. It describes certain "rights of survivorship" which Sister retained to herself, but does not define those rights. It is not clear from any other part of the deed what those rights of survivorship were: Rights to a joint tenancy? To bequeath some portion of the fee by a will? To a tenancy in common? Or, as Sister claims, to a life estate?

¶ 12 Our research of published cases in which the phrase "right of survivorship" appears in a deed or other conveyance reveals that phrase is almost exclusively used in context of joint tenancy, tenancy in common, or in jointly-held bank accounts. We have not found any case where a life estate was created using that phrase alone. Sister's use of the phrase is more suggestive of a joint tenancy with rights of survivorship, rather than the reservation of a life estate.[3]

ter's grant of her share of the property to Mother was not absolute, and Sister's share would become the sole and exclusive property of the survivor of the two. Further, did Sister intend to have her interest in Mother's property be conveyed to Brother by Mother? We do not rule on the merits of such an interpretation, but state it only to support our conclusion that the language used creates an ambiguity.

¶ 13 The trial court correctly determined as a matter of law the deed was ambiguous requiring its next step of interpreting the deed. We must nevertheless reverse the trial court's decision because the record reveals the trial court examined documentary evidence which did not support its findings, and had no other evidence before it indicating the intention of the grantor or grantee. We therefore reverse the trial court's finding on this issue and remand with instructions for further proceedings.

¶ 14 Upon remand, the trial court is directed to conduct an evidentiary hearing to discern the intent of Sister, the grantor.[4] The trial court's findings of fact allude to three documents it used in support of its conclusion that a life estate was created: the May 3, 1995, quit claim deed from Mother to Brother; a probate order finding that Sister had a life estate; and the July 20, 2001, quit claim deed from the two remaining children to Brother which reserved the "Life Estate of Judy Gayle Moss." We hold none of these extraneous documents support the trial court's conclusion that a life estate was created by the May 2, 1995, quitclaim deed from Sister to Mother. Each of the documents created after the May 2 quit claim deed refer to the life estate assumed to have been created in the May 2 deed. Neither of those subsequent deeds create a life estate; they merely reflect an unproven assumption. Further, the fact that Brother and Sister jointly petitioned the probate court to determine the status of their mother's property is meaningless. The probate court can only divide property belonging to an estate; its pronouncement is not intended as evidence of quiet title. As set out earlier, Mother owned no real estate at her death; therefore the probate court could not quiet title to property the estate did not own. In short, the trial court's conclusion is based on a logical fallacy: the supporting documents fail to prove the intent of the quit claim deed because the intent of the quit claim deed is taken for granted by the supporting documents themselves.

¶ 15 Thus, the trial court's reliance, if any, on these documents was error. Upon remand, the trial court must look to other evidence adduced to determine the intent of the grantor (Sister) and determine if that intent was reflected in the granting clause of the deed.

¶ 16 A life estate may be created by deed, will, lease, or contract. *Cassina v. Jones,* 1959 OK 117, ¶ 6, 340 P.2d 482, 483. No particular words are necessary to create the life estate, but the estate may be created if the deed manifests such an intent. *Thoma v. Coats,* 1952 OK 31, ¶ 5, 205 Okla. 688, 240 P.2d 736, 738. However, failure of a grantor to clearly express the kind of rights retained in a conveyance may result in the entire fee title passing to the grantee, without reservation. *See, Whitman v. Harrison,* 1958 OK 141, 327 P.2d 680, which held:

> That poses the question whether express words of reservation in the deed are necessary. Whatever the rule or the result might be in the absence of any statute, this court had held that in view of the above statute *there must be, somewhere in the deed, appropriate language expressly reserving some interest in and to the grantor, or the grantor's entire interest passes by a warranty deed to real estate.*
>
> . . .
>
> That rule was followed in *Cutright v. Richey,* 208 Okl. 413, 208 Okla. 413, 257 P.2d 286, 287, where, in syllabus paragraph 4 we held:
>
> "A grantor in a deed is presumed to have made all the reservations he intended to make and he is *not permitted to derogate from his grant by showing that some reservation was intended but not expressed.* [16 Am.Jur. Deeds, Sec. 406; *Tong v. Feldman,* 152 Md. 398, 136 A. 822, 51 A.L.R. 1291]."
>
> . . .
>
> A conveyance is to be construed most strongly against the grantor. *Edwards v. Brusha,* 18 Okl. 234, 90 P. 727.

*Id.,* at ¶¶ 12, 15, 16, and 24, 327 P.2d at 682–3 (emphasis added).

---

4. Obviously, the intent of Mother, the deceased grantee, is impossible to discern.

PARTNERSHIP DISSOLUTION

¶ 17 Brother and Sister operated a cattle-raising enterprise as a joint partnership in 2001 or 2002 until they decided to dissolve the partnership. While they operated as a partnership, there was no formal creation of such an entity and no written partnership agreement. The parties did open a joint checking account into which partnership funds were deposited. However, at various times, Brother deposited personal funds into the partnership account and then used those funds to purchase equipment he characterized as personal, rather than partnership property. This included a backhoe and a hay rake, the two items of property whose ownership is disputed in this matter. The trial court, after hearing only the testimony of Brother (Sister did not testify) found that the account was operated "rather loosely" as a partnership account; however, the facts established by Brother's testimony rebutted the presumption that the backhoe purchased with partnership account money was a partnership asset and found from the evidence that the backhoe was Brother's personal property and awarded it to him. The trial court did not make the same finding regarding the hay rake, ruled it was partnership property, and awarded it to Sister. We have reviewed the trial court's finding of fact and conclude it is supported by the evidence. We find no abuse of discretion occurred and affirm the trial court's findings regarding the division of the partnership property.

¶ 18 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.

GABBARD, P.J., and RAPP, C.J. (sitting by designation), concur.