# CHARLESTON.

### William J. Palmer v. John M. Newman and Nellie S. Newman.

Submitted April 18, 1922.　　Decided April 25, 1922.

1. Easements—*Properly Maintained Gates of Reasonable Width May be Placed by Owner of Servient Property on Right of way, Unless Grant Provides Otherwise.*

   Gates of reasonable width properly maintained and sufficient for convenient ingress and egress of teams, wagon and vehicles used for farming purposes, may be maintained, at the points of entrance and exit to the servient estate, on a right of way to and from farm lands, and through cultivated fields of the servient property, if there be nothing to the contrary in the grant of the easement. (p. 15).

2. Same—*Where Width of Right of Way is not Specified nor Determinable from Grant. the Parties' Intent will be Considered.*

   Where the width of a right of way is not specified in the grant, nor determinable therefrom, the scope and purpose of the deed creating it, the situation and use of the property, and the intent of the parties will be considered, so as to provide a reasonable, safe and convenient way for the purposes for which it was intended.　(p. 18).

3. Same—*Right of Way as Fixed by Fences, Etc., Acquiesced in for Years Will be Considered as of the Width Intended by Grant.*

   If the grantor or grantee of such right of way, at the time of the grant or soon thereafter, practically locates the width thereof at any point by the erection of fences, gates or other structures, and this practical location is acquiesced in by the other party and is used by him without objection for many years, it will be considered that the width thus fixed was intended by the grant.　(p. 20).

4. Equity—*It is Error to Base a Decree Upon Matter Pleaded. where such Matter has been Stricken from the Records.*

   In order to sustain a decree the subject matter thereof must be pleaded; and where the pleading which set up the subject matter has been stricken from the record it is error to pronounce a decree thereon affecting the rights of the parties in such matter.　(p. 21).

Appeal from Circuit Court, Wetzel County.

Suit by William J. Palmer against John M. Newman and .another.    Decree in favor of the plaintiff, and the defendants appeal.

*Reversed and bill dismissed.*

.*Larrick & Lemon,* for appellants.

*E. H. Yost* and *W. J. Postlethwait,* for appellee.

LIVELY, JUDGE:

The decree complained of, entered March 12, 1921, directed defendants to remove any obstruction such as fences, posts and the like, placed by them, from a right of way belonging to plaintiff, and running over the land of defendants, which would hinder plaintiff in the free use thereof, and enjoined defendants from interfering with plaintiff's free use thereof by plowing, or otherwise, in the right of way; but accords defendants the right to erect a gate or gates at the point of intersection of the right of way with the county road that, when opened, will give an unobstructed passage of 20 feet in width, and the right to erect a gate or gates at the boundary line between the parties giving a 16 foot passage.    The decree further determines and adjudges the right of way to be 16 feet uniform width its entire length over defendants' land, being 8 feet on each side of a line run by a surveyor in the center of an old road which is designated in the conveyance to plaintiff as the "outlet."    The decree further restrains defendants from interfering in any way with plaintiff's right to the proper use of the water from .a certain spring near the "outlet," and permits plaintiff or defendants to erect a gate in a fence built by them between the "outlet" and the spring, for the free passage of persons to said spring.

The two tracts, one of about 62 acres owned by defendants and the other of about 41 acres owned by plaintiff, were formerly in one tract of about 114 acres owned by Wiley Palmer, who in 1910 conveyed to plaintiff the 41 acre tract which lies back of the other, and in the deed granted a right of way over the 62 acre tract in these words: "The party of the

first part, in further consideration of this conveyance hereby grants and conveys unto the said party of the second part, an outlet leading from this 41.4 acres, extending West to the public road leading to Proctor, it being the same road now leading from the public road to this tract of land. The party of the second part is also hereby given the right to use the water from a certain spring located on the premises of J. W. Palmer, and along the right of way hereinbefore mentioned.'' In 1916 he conveyed the 62 acre tract to defendants.   In 1920 friction arose between these owners over this right of way, culminating in this litigation.

When Wiley Palmer made the deed to plaintiff in 1910, the road in litigation had, sometime prior thereto been used to reach the back portion of his land (now the 41 acres) from the public road, and an oil or gas well had been sunk on the back land, and a wide passage of 20 feet had been left through the fence at the public road for the purpose of conveniently affording passage for wagons hauling long pipe and timbers used in building the well.   There had been erected two gates, hinged on posts 20 feet apart, and meeting half way between on a small post about a foot high.   In 1912 or 1913 Wiley Palmer's barn, which stood near these gates, was burned, and in order to save the gates from the flames they were removed from the posts, and afterwards only one of them was replaced, the other having been carried away to another part of the farm, and the space thus left was boarded up, and rocks placed therein to buttress the new fence.   It was in this condition in 1916 when defendants purchased the 62 acres.   There is much evidence about this opening into the public road being left open and unobstructed by Wiley Palmer who did not seem to cultivate intensively that portion of the land.   Defendants in the year of their purchase plowed the land along the lower side of this old road and planted it in oats.   In places the plowing was close up to the road as marked by usage.   The major portion of the road was on slightly sloping land and had been dug down on the upper side as is usual when a road is made on sloping ground. At some places the used portion was wider than at others, the narrowest part being about 7

feet and 3 inches, and the widest being about 14 feet 8 inches.    Plaintiff's 42 acre tract is hilly and is used for farming in a small way, and some friction arose between one of his tenants, a mail carrier, and defendant in 1919, because the gate at the public road was frequently left open by the tenant.    About April 1st, 1919, some one took down the gate at the public road entrance, and removed the part which had been erected there in 1912 or 1913 by Wiley Palmer, leaving an open space of 20 feet between two posts left standing.    Defendant replaced the post and gate and boarded up the remaining open space as it formerly was. This was repeated two or three times at later intervals, and · defendant becoming convinced    that it was being done by plaintiff asked him if he was the person who did it.    Plaintiff replied that he had removed the gate and gate post, and proposed to show his deed for his property and right of way in justification of his acts.    An altercation took place which almost degenerated into a serious affray.    The plaintiff drew a pistol and fired it at defendant's son at close range, but fortunately missed him.    He was disarmed by defendant and his son, without much difficulty and without any blows being exchanged.    Plaintiff was arrested, but whether prosecuted does not appear.    This litigation followed.    Prior to this shooting affair there had been no controversy between the parties over this right of way or the gate at the outlet.    Evidently plaintiff conceived the idea that his deed gave him his right of way free from gates, and acting upon this conception, and without complaint or notice to defendant he removed gate and gate post as detailed.    No complaint had been made of the plowing done below and near the road for oats in 1916, or of any obstructions along the right of way at any other point.    For many years, ever since his vendor Wiley Palmer removed one of the double gates at the county road and hung the other gate, and boarded up the space made vacant by the removal of one gate, he had used the right of way and outlet without question or complaint.    His objection was to *any* gate, and not that the width of the outlet or the width of the road was insufficient.    Loaded two horse wagons had been taken over the

road and through the gate without inconvenience.    Plaintiff does not say that he cannot get through the gate conveniently unless he should want to turn up the hill in the public road, and he thinks that turn could not be conveniently made with a loaded wagon, although he never tried it.    A threshing machine had no difficulty in going in, and on over the road to the 41 acre tract and back again; and defendant's son had recently hauled twenty dozen sheafs of wheat on a two horse wagon over the road out to the public road through the gate without difficulty.    There is not much contention over the width of the road as shown by its long usage. The claim that the plowing in 1916, when the field below the road was sowed in oats, has restricted the road unreasonably for ordinary travel over it in the usual vehicles used, is more of an after thought engendered by the quarrel about the gate, when plaintiff's pistol was taken from him.    No claim or complaint had theretofore been made about this alleged encroachment of the plow.    Indeed no complaint had been made that the width of the gate prevented unrestricted travel. For seven years it had been in the condition it was when the suit was begun, and had been continually used by plaintiff and his tenants without a suggestion of obstruction or inconvenience.    The fact that the gate was there, and had to be opened and closed in passing through, and that plaintiff's deed made no mention of gates, seems to be the justification relied upon by plaintiff for arbitrarily removing the gate and gate post.    He was asked on cross examination: "Is that why you brought this suit to establish that right of way without gates?" and his answer was: "Certainly, if it (the deed) said gates there probably I would be in danger." Q. "It isn't a question then—if the gate was fifty feet wide you would still object to having gates on there?" Ans. "Sure, I haven't any deed to that effect."    His deed said nothing about gates on the easement, and conceiving that gates were an infringement on his rights under his deed, he arbitrarily removed them without any complaint or notice to defendants.    They were replaced and torn out two or three times before defendant became convinced of the identity of the person committing the acts.    We do not think

the evidence discloses any obstruction of plaintiff's ease-
ment.    Although there is no mention of gates in the deed
granting the easement, it does not preclude the owner of the
servient estate from protecting his fields through which the
right of way passes by gates reasonably    established and
maintained at the points of entrance and exit.    *Mitchell* v.
*Bowman,* 74 W. Va. 498; Jones on Easements, sec. 406.
Counsel for plaintiff does not contend that such gates may
not be maintained.    But it is asserted that the deed of the
right of way gives plaintiff a right to have an outlet 20 feet
wide at the county road, and a passage of 16 feet through
the line fence between the two tracts, such being the width
of the road as used at the time of the deed in 1910; and
that the road through the fields should have an average width
of 16 feet wide to provide for reasonable traffic, no width
having been designated in the deed.    It is a well settled law
of easement that where there is no stated width in the instru-
ment creating or reserving a right of way a suitable and
convenient way is meant which will be determined by its
sufficiency to afford ingress or egress to those entitled to use
it; and such sufficiency will depend upon the purposes of the
grant or    reservation, and the circumstances of each case.
19 C. J., p. 968, sec. 204.    "In determining the extent of a
right of way, it is proper to consider the whole scope and
purpose of the deed creating it, the manifest intent of the
parties in its execution and the situation of the property."
Jones on Easements, sec. 385.    The servient estate cannot
be burdened by the occupancy of a greater width than is
reasonably necessary for the purposes for which the right of
way was intended.    The "outlet" is described as the "road
now leading from the public road to this tract of land."
What was the width of the road at the time of the convey-
ance?    What was the purposes of the grant?    We can only
determine the location and width of this old road at the
time of the grant, by the evidence of its actual user as mark-
ed on the land by the vehicles that passed over it.    These
evidence no uniformity of width.    At some places the road
was narrow, at others much wider, depending upon the char-
acter of ground over which it ran.    On the sloping ground

where there was necessity for digging at the upper side, it was narrow and well defined. Where the ground was comparatively level the usage was wider, as is almost universally the case, where the inclination of the traveler led him from the first beaten way. Sometimes in such cases, muddy places will appear in the commonly used portion, and to avoid it a detour will be made where there are no natural or artificial obstructions to prevent. Such was done in this case. Where the properties joined, a muddy place in the road on the land of plaintiff caused him to change the beaten route several feet, necessitating, for his convenience, a corresponding change in the route where it entered defendant's land. Such changes for such causes do not widen the right of way as intended by the parties at the time of granting it. If such was the rule, the user could by unauthorized detours widen a right of way to an unreasonable width, and burden the servient estate to its serious detriment. The intent of the parties that a convenient and reasonable right of way if necessary for ingress and egress is not changed by such user. The land of plaintiff is hilly and can be used only for grazing and farming, and such use was contemplated when the deed was made and the right of way given. Was it intended that a road of uniform width of 16 feet through the fields of the grantor for that purpose should be given? We do not think the character of the properties, the situation of the parties, and the circumstances will justify such conclusion. Nor do we think that there is necessity for an exit of 20 feet at the county road, or that such was intended to be granted by the deed. Attempt is made to show that such width of exit is necessary if it was desired to make a turn up the hill upon entering the public road. The gate stands back six feet from the public road which at that point is 30 feet wide, and it does not appear that an ordinary farm wagon of standard gauge could not readily negotiate the turn. The wide opening of 20 feet which was made many years ago and which necessitated the double gates at that time, was made for the purpose of hauling long timbers and piping to the well then being constructed on the back land. That necessity and purpose had long since ceased. We do not

think the parties understood that such wide opening was granted or that double gates should be thereafter maintained. The parties to the grant have not so construed it. When the grantor's barn burned in 1912 or 1913, and the double gate was taken down to save from burning, Wiley Palmer, the grantor, replaced one only and restricted the width of the opening to one gate. There is some evidence that he did not do so; but we think it is reasonably established that he did by the testimony of his wife, who says she saw him put one gate back, board or fence up the remaining space, and place rocks to reinforce the space thus closed. The rocks still remain. The other gate he took away and used it elsewhere on the farm. Whether he put in an additional post is controverted. Defendant says such additional post was there when he purchased and in this he is corroborated by his son. Evidently there was something there on which to abut the gate and fence. The fact remains that the exit was constructed to the width of one gate in 1912 or 1913, by the grantor, and has remained in that way without objection until it was torn down by plaintiff in 1920. The practical interpretation of the parties to a grant of a right of way is very persuasive of what they intended. Not only the attendant circumstances and situation of the parties may be considered, but what they have done thereunder is one of the best aids in determining what they intended. "It is a familiar doctrine that when the terms of an agreement are in any respect doubtful or uncertain and the parties to it have by their own conduct placed a construction upon it which is reasonable such construction will be adopted by the court, because it is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the correct legal interpretation of the terms of the contract." *Camden* v. *McCoy,* 48 W. Va. 381. The doctrine is stated tersely by Judge Tindal in *Chapman* v. *Bluck,* 4 Bing. (N. C.) 187, as follows: "There is no better way of seeing what they intended than seeing what they did, under the instrument in dispute." And by Lord Chancellor Sugden: "Tell me what you have done under such a deed, and I will tell you what that deed means."

See *Caperton's Admr.* v. *Caperton's Heirs,* 36 W. Va. 486; Jones on Easements, sec. 389.    The continued use by plaintiff of this exit with one gate for at least seven years without murmur or complaint is very persuasive that it served his necessities satisfactorily, and that he construed his grant in conformity with that placed upon it by his grantor.    At the institution of this suit we cannot see that plaintiff's right of way and his free passage thereover was unreasonably obstructed.    There had been no change in the conditions, or usage of the properties.    The presence of the gate, and not because of its width was the cause of its surreptitious removal.    Plaintiff's deed "did not call for gates," and for that reason it was removed.    With reference to the preparation for a gate 11 or 12 feet wide between the properties although it may be wide enough, he says, "I don't want any gate there;" and, "I haven't any deed to bind me to open any gates."

It will be observed that the decree enjoins defendants from interfering in any way with plaintiff in the proper use of the water from a spring near the right of way, and which now appears to be separated from the right of way by a fence erected since the institution of the suit.    The water from this spring flows into a trough or barrel on the right of way where stock may use it.    The fence does not necessarily prevent plaintiff from entering and using the water therefrom.    Besides there is no pleading which brings this matter in issue on which a decree can be based.    It is true that plaintiff tendered and filed a supplemental bill in which he alleged that his use of the spring had been obstructed or denied, but the court struck it from the record and refused to consider it, and plaintiff does not assign cross error.

We have concluded to reverse the decree, and dismiss plaintiff's bill and it will be so ordered.

*Reversed and bill dismissed.*