BURROUGHS ET UX. *v.* MILLIGAN ET UX.

[No. 65, October Term, 1951.]

*Decided January 11, 1952.*

*Rehearing denied February 7, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*William J. McWilliams*, with whom were *McWilliams, Evans & Melvin* on the brief, for the appellants.

*William J. Boehm* for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

The question in this case is whether or not the appellees are entitled to a right of way 20 feet wide across the property of the appellants. The chancellor held that they are, and required the appellants to remove all stone walls, stone curbs, gate posts and other obstruc-

tions placed by them in that right of way. From the decree thus ordering, the appellants, defendants below, have appealed.

The case was heard below on September 22, 1949., After testimony was taken, briefs were submitted, and, on October 19, 1949, the chancellor and counsel made a personal inspection of the property. On May 15, 1951, one year and eight months later, the opinion was filed. Meanwhile, the court stenographer, who took down the testimony, died on March 23, 1950, and her notes on the testimony cannot be located. Under these circumstances, we have no testimony in the record and must decide the case, therefore, upon the statements of fact contained in the court's opinion, and any other facts we may find are agreed upon by the parties. The statement of the case in the opinion of the court is as follows:

"Joseph E. Hall owned a farm situate and lying near Herald Harbor. Included therein was a long, narrow peninsula extending into the Severn River. This peninsula became known as 'Long Point', and I will hereinafter sometimes call it that. It was about three thousand feet long, and, for the most part, only about three hundred feet wide, was bounded on the northeast by Old Place Creek and Round Bay, and on the southwest by Little Round Bay; and was entirely in woodland. A farm road ran from the public road at near Herald Harbor in a general southeasterly direction through about the middle of this peninsula to near the tip, or southeast end, thereof. * * *

"Mr. Hall decided to sell Long Point in lots for a waterfront development. He first sold about four acres at the extreme tip or southeast end thereof. The late L. Dorsey Gassaway purchased this lot; and it is marked 'Gassaway' on the Howard plat. The deed for this lot seems to have been dated August 16, 1915. The record is silent on whether Mr. Gassaway was specifically granted a right-of-way through that part of Long Point which lies to the northwest

of said lot, but, as said lot was at least a half mile from any public road, he would have been entitled to a way of necessity whether he was specifically granted one or not. The next lot sold was one acre conveyed to George Thompson Williams by deed dated September 24, 1919. This lot is designated 'Williams' on the Howard plat, and lies about four hundred feet northwest of the Gassaway lot, has an average width of some one hundred sixty to one hundred sixty-five feet, and extends across the entire peninsula, that is to say, from the waters of Little Round Bay to the waters of Round Bay. I will hereinafter sometimes refer to this lot as the 'Williams lot'. It is obvious that, if the owners of this lot were to get out to the public road, they had to have a right-of-way over that part of Long Point lying between said lot and said public road; and that, if Mr. Hall, and the purchasers of his remaining land lying to the southeast of said Williams lot, were to get out to said public road, a right-of-way thereover had to be reserved. They attempted to take care of both of these situations by inserting in the deed from Hall to Williams * * * a paragraph in the words and figures following, that is to say:

" 'Together with all the buildings and improvements thereon, and all the rights, roads, ways, waters, privileges and appurtenances thereto belonging or in anywise appertaining, and especially with the right of way over the existing farm roads of the parties of the first part from the public road leading to the property of the parties of the first part unto and out of the property hereby conveyed for the purposes of ingress and egress to and from the same reserving to the grantors a right of way over the property hereby conveyed by the existing road.'

"The next step in the panorama of events was several years later when Mr. Hall had Long Point surveyed by Mr. Howard, and the plat * * * made and recorded; and proceeded to sell lots with

reference thereto. This plat, in addition to the Gassaway and Wlliams lots, shows a lot marked 'Smallwood', a lot marked 'Judge', another marked 'Ramsey', and a road, twenty feet wide, laid out from the extreme northwest, or land, end of the peninsula to the Gassaway lot at its southeast end. The plaintiffs own a lot carved out of the unmarked lot lying southeast of the lot marked 'Smallwood'. They acquired this lot by deed dated June 11, 1946. The defendants own three lots. First, the lot conveyed by Hall to Williams, as aforesaid, and by Mrs. Williams, the widow and devisee of Mr. Williams, to Mr. Burroughs by deed dated November 15, 1937. Second, a lot lying northwest of said Williams lot and south of said road, designated by the number '69' on the revised plat of a part of said Long Point made by Edward Hall, Jr., January, 1929, and conveyed to Mr. and Mrs. Burroughs by deed dated March 11, 1946. Third, the unmarked lot shown on said revised plat lying immediately between said lot No. 69 and said Williams lot and conveyed to Mr. and Mrs. Burroughs by deed dated March 6, 1946.

"The defendants do not deny that the plaintiffs have a right-of-way over their lots. The dispute is over the width thereof, where the road passes through the Williams lot. While I understand that the plaintiffs have encroached on the road where it passes along the north side of the second and third lots acquired by them as aforesaid, I do not understand that I am asked to restrain any encroachment at that place, or at those places. I am, however, asked to restrain the encroachment alleged to have been made by the defendants on that part of the road which lies within the lines of the Williams lot. The plaintiffs· insist that they are entitled to have the road kept open for a width of twenty feet —the defendants say that eight or nine feet is wide enough. The determination of this question, as

heretofore indicated, involves the construction of the deed from Hall to Williams."

We have, therefore, the appellants succeeding to all of the rights of Williams, and we have the appellees succeeding to all the rights of Hall. *Stevens v. Powell,* 152 Md. 604, 137 A. 392; *Meade v. Denninstone,* 173 Md. 295, 196 A. 330, 114 A. L. R. 1227; *Greenwalt v. McCardell,* 178 Md. 132, 12 A. 2d 522. The appellees have no more and no less rights than Hall had after the execution of his deed to Williams. He *granted* a right of way over his "existing farm roads" in order to permit Williams to have a right of ingress and egress to the public road, and he *reserved* a right of way over the property conveyed "by the existing road". It is the reserved road with which we are concered here. The granted road was laid out by the J. Spence Howard plat, dated May, 1922, a part of the record of this case. That was nearly three years after the Williams deed. On that plat, from which Hall sold lots, there appears to be a 20-foot road running all the way through the sub-division. This may be a dedication by Hall which he and his successors in title are unable to dispute. It may be an interpretation by Hall of the "existing farm roads" over which he granted Williams a right of way to the public road, but it cannot be anything more (if it is that) than a one-sided interpretation by Hall of the right he *reserved* through the Williams lot. Williams had acquired his rights by the deed of September, 1919. He had accepted his lot subject to a reserved right of way over the existing road. What that existing road was at that time is a question of fact. Hall could not enlarge it three years later by platting a 20-foot right of way across Williams' land, unless Williams consented, *Greenwalt v. McCardell, supra, Sibbel v. Fitch,* 182 Md. 323, 34 A. 2d 773, and there is no suggestion or evidence that any such consent was given. The question is, therefore, not the question of a way of necessity, which is a matter of implication, but the question of a definite reserved way, which is a matter of contract.

Such a reservation is defined as "a clause of a deed whereby the * * * grantor doth reserve some new thing to himself out of that which he granted before." *Sheppard's Touchstone*, 80. *Coke's Commentary Upon Littleton*, 47a. *Schaidt v. Blaul*, 66 Md. 141, 145-146, 6 A. 669; *Herbert v. Pue*, 72 Md. 307, 311, 20 A. 182; *Dawson v. Western Maryland R. Co.*, 107 Md. 70, 91, 68 A. 301, 14 L. R. A., N. S., 809. What did Hall carve out of the land he granted to Williams? It was not a right of way generally across the property conveyed. It was not a right of way of a specified width, except in so far as the phrase used showed what width might be already established. It was a right of way by the *existing* road, and this word "existing" might have been an important qualification. The chancellor says the Williams lot has an average width of 160 to 165 feet. The present road is in the narrow part of this lot at the north, and the Pantaleo plat of the appellants' property, filed as part of the record, shows that the distance from the steps of appellant's porch to the edge of this road as it now exists is 20 feet. If the present road was the road existing at the date of the deed, its width might be important in view of the topograph and of the location of the house. However this may have been, and whatever may have been the reasons of the parties, the fact is that all that Hall reserved was a right of way over the road existing at the time the deed was executed.

In the bill of complaint filed by the appellees, it is stated that prior to the Howard survey from the year 1910 to the year 1922, there existed a farm road, referred to in the Hall-Williams deed, varying in width from 15 to 25 feet, and said road continued in a straight course along the ridge of the development, bisecting the Williams property from the western side to the eastern side at its highest elevation; that during the year 1921-1922, the existing farm road was relocated as shown by the Howard plat, and that a house was thereafter constructed on the Williams property upon the bed of the farm road as it theretofore existed, and that after

its relocation, the width of the road was 20 feet and continued in this width until 1947. It was also alleged that this road was used without any interruption until June, 1947, at which time the appellants erected a stone and rough rock wall upon the northern side of the 20-foot relocated right of way, reducing it six or seven feet. The answer says that the road is not now, nor has it ever been in any place as wide as 20 feet, and where it runs through the appellants' property, it does not now exceed, nor has it at any time in the past ever exceeded, eight or nine feet. The appellants admit that there existed a farm road, but deny it was ever as wide as 15 feet. They deny it ran through the Williams property in the manner alleged in the bill, and deny that it was ever relocated, and say that the road now running through the property is the original and only road, that it has never been relocated, that it has never been any wider than eight or nine feet, and, in 1919, was not even that wide.

It is obvious from the bill and answer that there is a very definite question of fact at issue between the parties. The opinion of the chancellor gives us little help on this point. He states that at the date of the deed, the land was nothing but a piece of woodland, and he *assumes* that the road leading into it was no doubt poor, narrow and in bad repair, but he does not find this as a fact, nor does he find as a fact that it was a one-way, single track road. He *reasons* that there must have been some place to pass, and he says that he cannot visualize the grantor and the grantee intending to establish a road so narrow that one motor vehicle could not pass another without difficulty. He then states at some length the reasons why he thinks that would not be reasonable , and holds that the right of the users of the right of way to pass other vehicles is a reasonable right, "that the plaintiffs are entitled to it as a matter of right rather than as a matter of grace." In all of the long discussion which we find in the opinion, however, there is no statement whatever what was the

*evidence* with respect to the original width of the road, or its relocation, and we are left entirely in the dark on these facts. Nor does the chancellor indicate that he makes any finding whatever as to them. His conclusion is based upon the unreasonableness of the contention that there existed only a one way road at the date of the deed. He does not find that there was a wide road there, and, in so far as we can judge from the opinion, there must have been testimony that there was only a narrow road there. This testimony he seems to reject because he does not believe it to be reasonable. But the chancellor's views on what was reasonable and what words the parties to the deed might have inserted in that instrument had they been foresighted, are not conclusions of fact.

The burden of proof was upon the complainants to established their case, which, as we have shown, is based upon the fact that there was originally a fifteen to twenty-five foot road which had been relocated, and that the present road was originally 20 feet wide until the appellants reduced it by six or seven feet. There is nothing in the record before us to show that they proved any of this, and, therefore, there is nothing in the record to show that they are entitled to an injunction against the appellants. It is unfortunate that the testimony has been lost and is not before us.

The appellants in their brief state that there was uncontradicted testimony to the effect that the position of the gate posts which were at the entrance to the Williams property from the west, had been unchanged for nearly thirty years. They also state that it is undisputed that the road, where it passes through appellants' property, has never at any time exceeded nine or ten feet in width, that it is now nine or ten feet in width, and it has never at any time during the past thirty years been any wider, that the entrance to appellants' property is marked by posts 11 feet apart, and they have never been further apart. They say that the easterly side of the road is marked by two utility

poles and a 26-inch oak tree. They also state that it is undisputed that during the thirty years no complaint was ever made to Williams or the appellants by Hall or any of his grantees. The Pantaleo plat shows the present width of the road is 11 feet between the posts, and then at various points, 9 feet 10 inches, 9 feet 6 inches, 9 feet 8 inches, 9 feet 5 inches, and then 11 feet. It also shows the location of the two Gas & Electric Company Poles, and an oak tree, 26 inches in diameter on the north edge of the present road. To this extent, the statements made by the appellants are substantiated by evidence, but the other statements are not, and the appellees, so far from agreeing to them, have filed a motion that the appeal be dismissed because there is nothing in the record to substantiate these statements, and without these facts, this court cannot find anything upon which to base its opinion. But the appellants have brought to this court all they have been able to salvage from the situation caused by the death of the stenographer long before the opinion was filed, and before it became apparent that they would need to have the testimony transcribed. It is not their fault that they have no better record, and they should not be penalized by having their appeal dismissed.

To sum up the situation, we have definite evidence of the width of the present road on the Pantaleo plat. We have the facts stated in the opinion that at the date of the deed, the tract was entirely woodland and that a farm road ran through the middle of the peninsula. We have no facts to justify the conclusion that in referring to the existing road, the parties to the deed referred to more than this farm road through the woods, and we can certainly take judicial notice of the fact, which is of common knowledge, that woods roads are not 20 feet wide. The chancellor said that it was possible that when the road was used only for hauling out a few loads of wood a year, it was little more than two wheel tracks. Under these circumstances, the facts do not justify the chancellor's decree. It is apparent

from his discussion that he did not find there had been a 20-foot original road, or an original road of 15 to 25 feet, as alleged in the bill, or an original road of any other definite width, or of different location. Had he found the existence of such a road, undoubtedly he would have declared that to be the correct road, and he would not have been put to the necessity of discussing what might or might not have been reasonably in existence at the time. We conclude, therefore, that he did not find any evidence of such a road, and that his decree is based upon a theory of reasonableness which may be applicable to ways of necessity, see *Tong v. Feldman*, 152 Md. 398, 136 A. 822, 51 A. L. R. 1291, and to general granted rights of way without any definite location, but which has no place in a situation where the parties have contracted with respect to a definite right of way, namely, an existing road.

Such a situation was recently before this court in the case of *Feldstein v. Sagall*, 198 Md. 285, 296, 81 A. 2d 610, 616. In that case, there was a definite agreement for a ten-foot alley between a fifteen-foot alley and a street. Part of the ten-foot alley had never been used at its true location, but considerable use had been made of part of it, and it was contended that it had been widened by prescription to 23 or 24 feet. We denied this claim, saying: "A right of way of prescribed width does not grow with the size of trucks and other automobiles. If tautology could clarify the plain words 'ten foot alley', it is at least obvious that rights in a ten foot alley do not include use of automobiles too large for a ten foot alley." It is just as clear in the case before us that the right to use an existing road, which is not shown to have been any wider than the ordinary farm road through the woods, cannot grow into a twenty-foot right of way by increased traffic to later constructed houses, and the changing of a piece of woodland into a subdivision. We are dealing with rights, and not questions of desirability, and we cannot give the appellees

more than they are legally entitled to because it would be convenient for them to have it.

The appellee relies upon the case of *Palmer v. Newman,* 91 W. Va. 13, 112 S. E. 194, 195, but we do not think this helps his contention. In that case, there was a grant of an outlet from the 41.4 acres conveyed to the public road, "it being the same road now leading from the public road to this tract of land". The main contention was about gates, but the plaintiff asserted a right to a passage of 16 feet. The court said: "It is a well settled law of easements that, *where there is no stated width in the instrument creating or reserving a right of way,* a suitable and convenient way is meant which will be determined by its sufficiency to afford ingress and egress to those entitled to use it; and such sufficiency will depend upon the purposes of the grant or reservation, and the circumstances of each case." (Emphasis supplied.) The court then went on to find the answer to the question what was the width of the road *at the time of the conveyance,* and found no evidence of uniformity of width, saying: "We can only determine the location and width of this old road at the time of the grant, by the evidence of its actual user as marked on the land by the vehicles that passed over it." In some places the road had been narrow and in some places it had been widened, and at one entrance there had been only one gate for seven years, without murmur or complaint. The court said: "The land of plaintiff is hilly and could be used only for grazing and farming, and such use was contemplated when the deed was made and the right of way given." There formerly had been an oil operation on the property. A wide opening of 20 feet, with double gates, had been made for the purpose of hauling long timbers and piping to the oil well then being constructed on the back land. The court held that it was not intended that the wide opening should be thereafter maintained, and that it had not been so construed, since it had been restricted.

The court in that case left the road as it was and did not extend it.

In a later West Virginia case, *Rhodes Cemetery Association v. Miller,* 122 W. Va. 139, 7 S. E. 2d 659, also relied on by the appellee, there was a right of way given without any designation as to width. The trial chancellor fixed the width at 16½ feet, and the Supreme Court of Appeals said this was in his sound discretion to determine what would be a reasonable width. The Massachusetts cases cited by the appellee, *Crosier v. Shack,* 213 Mass. 253, 100 N. E. 607, L. R. A. 1918 A. 260, and *Lipsky v. Heller,* 199 Mass. 310, 85 N. E. 453, are no more in point than the West Virginia cases, and do not support the contention that reference to a road fixes the location and not the width.

In a case decided by the Supreme Court of Appeals of Virginia in 1936 *Good v. Petticrew,* 165 Va. 526, 183 S. E. 217, 218, 219, an agreement had been made in 1924 for the privilege of using "the road and bridge * * * paralleling the division line. . . .". The court said: "The evidence shows that the road was laid out and constructed * * * before the contract was executed, and at that time it consisted of a narrow driveway * * *", and, after discussing the evidence, and referring to the *West Virginia* case of *Palmer v. Newman, supra*: "We are, therefore, of opinion that the lower court was plainly right in holding that the complainant is only entitled to a *one-way road* over the land of respondents." (Emphasis supplied.)

We have no quarrel with the contention that where a right of way is given without any definite designation, what is meant is one that is reasonable under the circumstances of the case. This is the general law, and the law of this State, but it is not applicable to the situation before us.

*Decree reversed with costs and bill of*
*complaint dismissed.*

MARKELL, J., delivered the following dissenting opinion.

On both sides this case, I suspect, may be much ado about nothing between unneighborly neighbors. If the decision were based on a narrow construction of the reservation in the 1919 deed, in special view of the alleged cramped size and shape of the Williams lot, I should doubt the result but refrain from a solitary dissent. Such a decision would be not altogether unlike the decision in *Good v. Petticrew,* 165 Va. 526, 183 S. E. 217. But the opinion in the instant case proceeds, with relentless logic, from an assumed premise to a conclusion contained in the premise. The premise and the conclusion, I think, are unsound and may create a bad precedent.

The assumed premise is this: In a deed of land in a wilderness, obviously intended to make a beginning of converting the wilderness into a place of civilized habitation, and not to perpetuate the wilderness or wilderness travel, a reservation of "a right of way * * * by the existing road" and a grant of a "right of way over the existing farm roads"—are (*a*) more restricted than would be a way of necessity and (*b*) restricted to a one-way road indicated by existing wagon ruts. A reservation ordinarily may be more strictly construed than a grant. However, when a grant and a reservation are created in the same deed, in the same clause, in the same words, for the same purpose, manifestly they must receive the same construction. The majority opinion in *Condry v. Laurie,* 184 Md. 317, 41 A. 2d 66 (as is indicated by the strong dissenting opinion to the contrary) seems to hold that a way of necessity is a creature of substantive law, not wholly dependent upon the intention of the parties. No case has been cited in which a way of necessity has been restricted to a one way road. In the instant case the majority opinion in *Condry v. Laurie* seems to be abandoned in favor of the dissenting opinion. But for the majority opinion in that case I should think that property owners might by express provision nega-

tive a way of necessity altogether or restrict it as they see fit, *e. g.*, to a right of way eight feet wide, or to a right of way by wheelbarrow only, or to a right of way of the width of an existing wilderness road or wagon ruts. The words of the 1919 deed, however, are not words which would be used to express less than nothing— to cut down what the law itself would imply in the absence of anything expressed.

To avoid such a narrow construction of this deed it is not necessary to assume that the parties in 1919 envisaged such a Paradise as has been created in much of Anne Arundel County in the last twenty-five years. But in 1919, as now, a one-way road was a temporary primitive convenience—or necessity. Nor need we assume that the parties contemplated use of the largest trucks and trailers of which we have acquired judicial knowledge through negligence cases. Any deed that looked beyond the wilderness state necessarily looked beyond a one-way road.

This court apparently does not differ with Judge Clark's view that the Gassaway deed in 1915, without express grant of a right of way, granted by implication a way of necessity. Such a way should not be limited to a one-way road. The result would be that any present owner of part of the Gassaway tract could prevent obstruction of a two-way road, which the court now holds the present plaintiffs cannot prevent. Such a result seems not only unreasonable but absurd. The right of way through the Williams property would be a two-way road for the Gassaway grantees and a one-way road for everyone else on the peninsula. The question is not whether the reservation covered a "reasonable" way or the "existing" way, but what is a reasonable construction in all the circumstances of "existing" way. Is it restricted to a one-way road? I think not.

I cannot brush aside the Howard plat, recorded in 1922, to which Judge Clark ascribes considerable significance. Of course, a grantor cannot by a declaration subsequent to his grant, without the consent of his

grantee, narrow his grant or (what is the same thing) broaden a reservation in it. But the Howard plat was more than an *ex parte* declaration. The grant and the reservation in the 1919 deed created reciprocal rights in a road extending the entire length of the peninsula. Williams had the same interest, no more, no less, as Hall and Gassaway and future owners in establishing a uniform width of the road throughout its length. None of them could have expected or intended to make the Williams property a bottle-neck, restricting all other owners to a one-way road through the Williams property but giving all owners, including Williams, a twenty foot road throughout the rest of the peninsula. I think the recording of the Howard plat in 1922 was an offer of mutual settlement of the location and width of the entire road. If Williams, expressly or by acquiescence, accepted the Howard plat he was as much bound by it as if he had signed it. I appreciate that in the absence of any testimony in the record we are somewhat embarrassed as to drawing inferences from conduct or silence for some twenty-five years after the recording of the Howard plat. It cannot, however, be inferred from mere lapse of time that the other owners acquiesced in making the Williams property such a bottle-neck in the peninsula road. The belated building of a stone wall on the Williams property suggests the contrary, *viz.*, that neighbors did not encroach on the Williams property through mere spite, but because now and then two vehicles must pass and cannot pass on a one-way road.

"Stone walls do not a prison make"—nor wagon ruts a road.