## DIXON, ET UX. *v.* FRANTZ, ET VIR

[No. 537, September Term, 1966.]

*Decided March 5, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS and FINAN, JJ.

*W. Dwight Stover,* with whom was *Jack R. Turney* on the brief, for appellants.

*William W. Grant* for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

In 1905 Garrett Dixon owned "Blooming Rose," a 270 acre farm fronting on a public road in Garrett County. In March of that year he conveyed to Edwin Dixon 97 acres thereof fronting on the public road. To guard against being landlocked the grantor inserted in the deed the following:

> "Save and excepting the right of way or road as it is now located and used leading from Garrett V. Dixon's house up to the county road by way of big barn and brick house, which right of way is hereby reserved unto the said Garrett V. Dixon."

Appellant (Dixon) has owned the 97 acre tract since 1951. Appellee (Frantz) acquired the remainder (173 acres) of "Blooming Rose" in 1942.

More than a half century of unbroken tranquility was shattered in May 1966 when Frantz filed a bill of complaint in the Circuit Court for Garrett County praying the issuance of an order "enjoining and restraining" Dixon from "obstructing the right of way" and requiring him to remove certain "fence posts, rocks and other obstructions" said to have been placed in the right of way. Dixon denied the allegations in the bill and asserted he has "never obstructed the passage of" Frantz. He conceded Frantz's right to use the right of way but, he declared, the 1905 reservation "included only such width as was sufficient for a wagon to pass over the said roadway." He recognizes the "roadway as it presently exists as approximately 16 feet wide."

Five color photographs offered by Frantz were admitted into evidence. They show a typical single track country road

with a row of fence posts on either side. It is evident the road has been in regular use for a considerable period of time. Frantz sought to show by the testimony of Earl Miller, line superintendent for Somerset Rural Electric Cooperative, that the poles of the power line, shown in the photographs as being 6 to 10 feet outside the line of fence posts, were placed originally in the line of fence posts and that Dixon later moved the fence posts 6 to 10 feet closer to the road. Mr. Miller's testimony seems to us to be inconclusive. He said he "usually" placed his poles along a fence line and that "to the best of his knowledge" that is where he put these poles. Dixon said the power poles were put in the line of a temporary electric fence. The fence posts shown in the photographs, he said, have always been in the same place.

Wesley Michaels is employed by Frantz as a handyman. One winter day he and Frantz were driving a farm tractor, towing a wagon, up the right of way. One of the Dixon boys, coming the other way, stopped his car in front of them and, said Michaels, refused to back up. After about 5 minutes Frantz turned out into the field and went around him.

Leslie Guard is a farmer. He was produced as a witness for Frantz. He told about the time in 1960 when he filled Dixon's silo, an operation which took about 1½ to 2 days. During the day his machinery "had the lane partly blocked." In the evening it was moved back out of the way. While ensilage was being unloaded from a wagon the road would be blocked for about 10 minutes. No one was ever inconvenienced by his presence there, he said. In succeeding years he positioned his equipment so that the road would not be blocked at any time. He also said he had known the road for 20 years or more and that there had never been any change in it.

Lloyd Jenkins is employed by Frantz. He said two wagons could not pass unless one got "out of the track." He said also that the right of way "was around fourteen, maybe sixteen feet between fences." He recalled that on one or two occasions a milk truck had the road blocked for 15 or 24 minutes. He never tried to move a combine or a corn picker over the road. Dixon testified, however, that recently he saw a corn picker go in to Frantz's farm.

Dixon acquired the farm from his mother and he has lived on it all of his life. He testified it was not possible for two vehicles to pass unless one of them turned out into his field. He put up new fence posts in place of the old ones "to keep people out of the fields."

Ross Fike, 73, testified for Dixon. He has known the property since 1911. He could see no change either in the road or the fence posts.

Charles Dixon, 68, has known the road since 1905. He said neither the fence nor the road has changed. He did not think it had ever been as wide as 16 feet.

Ray Dixon, 68, was raised on the property. He said one lane was all they had. He couldn't remember a time when two vehicles ever had to pass each other.

Robert Faucett, 79, has known the road since 1946 and it has not changed. He thought the new fence posts "were in where the old ones" were.

The learned chancellor concluded that because no width had ever been designated for the right of way since its creation in 1905 "the only issue to be decided" was its width. He was of the opinion that 20 feet between fences or posts was "entirely reasonable and necessary" and he so ordered.

The facts in the case at bar are not unlike the facts in *Burroughs v. Milligan,* 199 Md. 78, 88-89, 85 A. 2d 775 (1952), which we think is controlling here. Chief Judge Marbury, for the Court, said:

> "To sum up the situation, we have definite evidence of the width of the present road on the Pantaleo plat. We have the facts stated in the opinion that at the date of the deed, the tract was entirely woodland and that a farm road ran through the middle of the peninsula. We have no facts to justify the conclusion that in referring to the existing road, the parties to the deed referred to more than this farm road through the woods, and we can certainly take judicial notice of the fact, which is of common knowledge, that woods roads are not 20 feet wide. The chancellor said that it was possible that when the road was used only for

hauling out a few loads of wood a year, it was little
more than two wheel tracks. Under these circum-
stances, the facts do not justify the chancellor's de-
cree. It is apparent from his discussion that he did not
find there had been a 20-foot original road, or an
original road of 15 to 25 feet, as alleged in the bill,
or an original road of any other definite width, or of
different location. Had he found the existence of such
a road, undoubtedly he would have declared that to
be the correct road, and he would not have been put
to the necessity of discussing what might or might not
have been reasonably in existence at the time. We con-
clude, therefore, that he did not find any evidence of
such a road, and *that his decree is based upon a the-
ory of reasonableness which may be applicable to ways
of necessity, see Tong v. Feldman, 152 Md. 398, 136
A. 822, 51 A.L.R. 1291, and to general granted rights
of way without any definite location, but which has
no place in a situation where the parties have con-
tracted with respect to a definite right of way, namely,
an existing road."* (Emphasis supplied.)

In *Burroughs* the right of way was reserved simply over
"the existing road." In the case at bar it was reserved over
a "road as it is now located and used" and the evidence ex-
cludes any notion that it was ever anything but a single track
country road. Indeed Dixon's concession that its width is 16
feet bespeaks a modicum of generosity, since the evidence might
well support a more restrictive limitation on the width of the
easement. Moreover, as we see it, the evidence falls short of
supporting the only complaint Frantz made in his original bill,
viz., that Dixon was obstructing the right of way with "fence
posts and rocks and other obstructions." But our holding must
not be supposed to mean that the chancellor will be powerless,
in the future, to enjoin any hindrance or obstruction rising
above the level of the few isolated and relatively trivial inci-
dents described in the evidence.

*Decree reversed.*
*Costs to be paid by the appellees.*