WILLIAM J. WILSON ET AL. *v.* GEORGE DEGENARO

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE NO. 033123
FAIRFIELD AT STAMFORD

Memorandum filed June 7, 1979

*Badger, Fisher, Cohen & Barnett,* for the plaintiffs.

*Ross Rapaport,* for the defendant.

FREEDMAN, J. On January 27, 1927, Millard K. Palmer deeded land to Helen Louise Cornish, reserving for himself a right-of-way, as follows: "Reserving to me, the said grantor, my heirs and assigns, the right to use, for travel telephone, electric service, water and other public utilities, the driftway *as now laid out* extending from said first mentioned driftway, through the tract of land hereby conveyed to the tract of land still owned by me, bounding the tract of land hereby conveyed to the south." (Emphasis added.) At issue is the

width of that right-of-way. The plaintiffs claim the evidence has established that width as it was "laid out" in 1927, and that evidence of post 1927 occurrences is irrelevant. The defendant, who counterclaimed, argues that the words "as now laid out" are ambiguous and that the court must determine the intent of the grantor.

The court, upon stipulation of the parties, agreed to hear evidence as to the claims of both parties, subject to the reservation by the plaintiffs of an objection to evidence of any post 1927 occurrences. By agreement, it was left to this court to determine later what evidence should be considered. This and other generous stipulations by counsel have allowed the court to shorten what could have been an extremely lengthy trial. Extensive, incisive argument and briefs have supplemented the evidence. Both sides were ably served by counsel.

# I

The rule in Connecticut is stated in *Peck* v. *Mackowsky,* 85 Conn. 190, 194: "The words 'as now used,' with which the reservation concludes, were employed to designate the location of the way, and not to define or restrict the use to which the way might be put." The defendant concedes in his brief that the words "as now laid out" are not materially different from the phrase "as now used," but appears to argue that the "location" does not include the width of the way.

Courts look to the usual meaning of words in construing a deed. "Lay out" is defined by The American Heritage Dictionary as "[t]he laying out of something; The arrangement, plan or structuring of something laid out; overall picture or form." Ballentine's Law Dictionary defines "laying out" as "Locating and establishing a new highway." The American Heritage Dictionary defines "locate" as

"to determine or specify the position and boundaries of" and "location" as "the fact of being located or settled." Similarly, Ballentine's Law Dictionary defines "locate" as "to set in a particular spot or position" and "to designate a particular portion of land by limits." It further defines "location" as "in the case of land, defining the boundaries or otherwise describing it so that another may know where it lies and its extent."

Our Supreme Court, in adopting these meanings, has declared that "to lay out a highway is to locate it or define its limits." *Crawford* v. *Bridgeport,* 92 Conn. 431, 436; *Lake Garda* v. *Battistoni,* 160 Conn. 503. It refers to the creation or establishment of a road. *Wolcott* v. *Pond,* 19 Conn. 597, 601; *Woodbridge* v. *Merwin,* 27 Conn. Sup. 469, 473.

The words "as now laid out" are not only analogous to the phrase "as presently used" interpreted in *Peck* v. *Mackowsky,* supra; they speak even more clearly to the subject of location. Giving the words their ordinary meaning, "as now laid out" clearly referred to the "location" of the right-of-way when it was reserved in Palmer's deed in 1927.

Since the Supreme Court found that the words "as now used" clearly defined the location of the way, this court has no difficulty in finding that the words "as now laid out" similarly define the location of this right-of-way. The defendant's claim that "location" does not relate to width denies the word its common meaning. Location, by definition, signifies and implies the determining of applicable boundaries. The width of the right-of-way in 1927 was one of those boundaries. The grantor referred to something actually in existence. It was there. It would be illogical to assume he intended to specify its location (boundaries) but, without so stating, not specify its width, which was inevitably part of those boundaries. Perhaps he could have

done so, but he did not. His referral to the right-of-way "as now laid out" clearly tied it down to the dimensions then and there existing. *Peck* v. *Mackowsky,* supra. His intention was not in doubt.

The plaintiffs, in final argument, claimed the way did not exceed twelve feet. The court, having heard the evidence and determined its credibility, is in agreement. While precise mathematical certainty is difficult to determine in cases such as this, the court is satisfied that credible evidence supports the existence in 1927 of a right-of-way with a traveled portion not exceeding eight feet. There was some evidence that the road consisted of more than the traveled portion. The court agrees. "Shell Road" consisted basically of oyster shells, combined with other materials. The evidence supports the reasonable conclusion that it could not rise perpendicularly from its base in the wetlands but was somewhat sloped. It is logical to conclude that the two sides of that road accounted for some additional footage. This accords with concessions made by the plaintiffs in argument, surveys in evidence and evidentiary admissions by the defendant that the road did not exceed twelve feet. Twelve feet is also the present width of the road. It leads to the ultimate conclusion that the defendant should not be allowed to encroach on any more than twelve feet of that road.

The court agrees with the holding in *Burroughs* v. *Milligan,* 199 Md. 78, where grantor's reservation of a right-of-way "by the existing road," was held not a way of necessity but a definite reserved way. The court held a way of necessity or a general right-of-way without location has no place where a definite right-of-way exists as evidenced by an "existing road." Such rights do not grow with increased traffic. "We are dealing with rights, and not questions of desirability, and we cannot give

the appellees more than they are legally entitled to because it would be convenient for them to have it." Id., 89.

As early as 1886, the Massachusetts court was in accord. In *Dickinson* v. *Whiting,* 141 Mass. 414, a conveyance allowed the use of a specific road ("The lane on the south side of said premises"). Since a defined way was in existence at that time, the court held it was not a general right-of-way convenient for the grantee of such a width as might thereafter be determined by various circumstances, but was of the lane so existing. Similarly, in *Burgas* v. *Stoutz,* 174 La. 586, the court held that a "paved runway" being a physical object on the surface of the ground, and its length and width being ascertainable, the defendant's claims that the language failed to state sufficiently the length or width of the passage were without merit. See also *Lattimer* v. *Sokolowski,* 31 N.Y.S.2d 880.

The annotation "Width of way created by express grant, reservation, or exception not specifying width" in 28 A.L.R.2d 253, sums it up: "Ordinarily, a grant or reservation of a right of way by instrument referring to an existing way at the place contemplated, and not otherwise indicating the width of the passage, operates to limit the width to that of the existing way . . . ." Id., 267. Such a reference leaves "little ground for the contention that the intended width was other than that of the existing way." Id., 268.

## II

Despite this conclusion, the court has examined the defendant's counterclaims and the evidence advanced to support them in order to ensure that he receive a full hearing of his claims of law and fact. He argues that the deed is ambiguous as to the extent of the easement, positing that since it

was not limited to travel alone, but included public utilities, we must find specific intent to create a much broader way than the existing road referred to; that it must include what is necessary to the reasonable enjoyment of the road, and should confer a "practical right" to allow the full and complete "future development and use of 5 acres of undeveloped land."

The short answer is that the deed is not ambiguous as to the reserved way. But assuming for the sake of argument that an ambiguity exists, the defendant failed to produce sufficient credible evidence to meet the burden of proof necessary to sustain the premise of his claims.

When a deed is ambiguous: " 'There should be considered, when necessary and proper, the force of the language used, the ordinary meaning of words, the meaning of specific words, the context, the recitals, the subject matter, the object, purpose, and nature of the reservation . . . and the attendant facts and surrounding circumstances before the parties at the time of making the deed.' " *Andrews* v. *Connecticut Light & Power Co.,* 23 Conn. Sup. 486, 490. The court has determined from the evidence that none of those considerations support the defendant's claims.

The intent of the grantor as spelled out in the deed itself must be interpreted, not the grantor's intent in general, or even what he may have intended. *Lake Garda Improvement Assn.* v. *Battistoni,* 160 Conn. 503. The credible evidence does not sustain the burden of proving that said intent requires a right-of-way in excess of twelve feet. No satisfactory evidence indicates that he intended the land to be fully developed. It is just as reasonable that this oysterman wished his "Shell Road" to remain basically as it was to preserve the ecology of this area so near the water. To find such ambi-

guity, that the "reasonable uses" of the property by 1979 development standards must be determined, would replace factual interpretation with pure speculation designed to suit the defendant's convenience. This the court cannot do absent credible evidence.

Evidence received from representatives of public utilities was tentative, unsure and probative of little but speculation. Nor could the court accept testimony, modified on cross-examination, that twenty to twenty-five feet was required to introduce a sewer line to the area. Interestingly, it was conceded that any sewer line used to service the defendant's property would be connected to the municipal sewer system. There is no evidence that the grantor intended that sewage was to be handled by a public utility; if he intended future connection to the municipal system, he was not, by definition, including sewage removal within his concept of the public utilities that were to serve the property. Similarly, the court finds that the grant to the Greenwich Gas Company was given by a third party, Walter B. Palmer, at a later date, 1933, and is not probative of the intent of Millard K. Palmer in 1927. Neither can an easement granted by Walter B. Palmer in 1949 shed any light on the grantor's intent in 1927. Even with respect to utilities contemplated to run above ground, the testimony regarding telephone poles was entirely inconclusive.

The defendant made an ingenious comparison of maps in attempting to show that the right-of-way has meandered or changed its location, although, significantly, not its width. But a review of the maps and of all of the accompanying testimony left the court without confidence in the accuracy and validity of those comparisons, especially since the defendant's survey followed two widenings of the way by the defendant.

Giving the defendant's evidence its strongest interpretation, the court does not find that the defendant sustained his burden of establishing a right-of-way in excess of twelve feet.

## III

Starting in 1949, deeds in the defendant's chain of title refer to a recorded map description of the right-of-way. While the defendant appears now to question the accuracy of some of the surveys, they portray a road which clearly is not shown to exceed twelve feet. The defendant had notice of both the reference to the existing road in 1927, and the recorded survey description. He knew from the records what he was getting. See *Stanio* v. *Berner Lohne Co.*, 7 Conn. Sup. 452, 455. It is the policy of our law that all land titles should appear upon the land records. "[T]he real nature of the transaction, so far as it can be disclosed, must appear upon the record, with reasonable certainty; and if the deed does not actually give notice of any condition or other circumstance, which might be important, it should at least point out a track, which the enquirer may pursue to obtain it." *North* v. *Belden*, 13 Conn. 376, 379–80. Unquestionably, the deed in question did so. It is those land records upon which Connecticut's property rights are based. It is elementary that nothing should be allowed to weaken the effectiveness of that system of records. *Ashley Realty Co.* v. *Metropolitan District*, 13 Conn. Sup. 91, 95. To act otherwise would invite chaos.

The evidence also revealed a recognition by the defendant of a twelve foot right-of-way. In a 29 September 1977 letter to the Greenwich town attorney, he stated: "A copy of the actual survey indicates, the right of way across Mr. Wilson's property is approximately 12 feet wide throughout its entire length . . . . The fact that I may have improved

the right of way is completely irrelevant and in any event, since the right of way is twelve feet wide, I had a perfect right to do so."

It was stipulated in lieu of testimony, that the defendant would testify that he was not stating his own opinion, but merely what the map showed. Yet he clearly set forth and relied upon the effect of that map in 1977.

In a variance request filed 23 August 1976, the defendant included a 1976 survey. It was stipulated at trial that he would testify that it was a map of his own property and not of the right-of-way which he did not feel was accurately portrayed. But the right-of-way was pictured as being approximately one-third the width of the thirty foot road with which it connects. It may be that the right-of-way was not accurately portrayed. But against the background of the evidence, including the other surveys, it is doubtful that any inaccuracy was substantial enough to materially aid the defendant's claims. Nor was the zoning board informed of any inaccuracy in the map. While it was a map of his own property, this was the accessway to that property, and it is doubtful that the defendant would submit a survey to the board with dimensions of that way which he knew to be radically wrong, without so stating. After using the documents before an official body and taking those documents in conjunction with his 1977 letter, it is difficult to permit the defendant to attempt to negate, in an equitable proceeding, the accuracy of the very documents upon which he relied at another time.

Even the acceptance of the defendant's premise that the reservation was general as to its extent would not avail him; he then falls within the purview of another doctrine damaging to his position. Connecticut courts have held that a right-of-way

stated in general terms is limited to a way actually taken and used by the grantee of that right. *Richardson* v. *Tumbridge,* 111 Conn. 90, 96; *Pudim* v. *Moses,* 20 Conn. Sup. 311, 313–14. See also *Lake Garda Improvement Assn.* v. *Battistoni,* 160 Conn. 503, 516. The evidence satisfactorily determined the way taken and used in 1927 and subsequent years. Other states are in agreement. In *Winslow* v. *Vallejo,* 148 Cal. 723, the court held that the use of a general grant, with consent, in a certain course fixes its boundaries; and that what was once indefinite becomes fixed by use and cannot be changed at the pleasure of the grantee after it is established. See also *Dudgeon* v. *Bronson,* 159 Ind. 562, holding that once a way is fixed by acceptance and use, the user may not change it to a right-of-way by necessity.

Generally, land rights are to be determined at the time they are granted. *Drummond* v. *Foster,* 107 Me. 401; *Lattimer* v. *Sokolowski,* 31 N.Y.S.2d 880. Where a way is created without specifying any particular width, even though the road was in existence, the right-of-way is limited to the width as it existed at the time of the grant. *Good* v. *Petticrew,* 165 Va. 526; *Palmer* v. *Newman,* 91 W. Va. 13; *Kotick* v. *Durrant,* 143 Fla. 386.

Therefore, even if the contested phrase in the deed was considered to be ambiguous, the facts of this case and the prevailing case law would not help the defendant; the credible evidence still does not permit finding a right-of-way in excess of twelve feet.

## IV

The parties stipulated that either party in whose favor an injunction is entered will, if necessary, amend the pleadings and prayers for relief to conform to the court's determination of the width of the right-of-way.

Since the court finds that the right-of-way is not in excess of twelve feet, an injunction shall issue in favor of the plaintiffs as follows: The defendant,[1] his agents, servants and employees are enjoined from performing any and all acts outside an area six feet from either side of the center line of the right-of-way as presently located on the property of the plaintiffs.

---

[1] To eliminate the need for adding a party, the defendant, with the plaintiffs' agreement, gratuitously stipulated that any injunction granted against him would remain in effect against his wife, Mary Jane DeGenaro, as well.